[No. B178676. Second Dist., Div. Eight. June 2, 2006.]

CHARLES GELFO, Plaintiff and Appellant, v.
LOCKHEED MARTIN CORPORATION, Defendant and Respondent.

**COUNSEL**

Law Offices of David H. Greenberg, David H. Greenberg and Roslynn E. Anderson for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Elena R. Baca and Katherine C. Huibonhoa for Defendant and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

Appellant Charles Gelfo sued his former employer, respondent Lockheed Martin Aeronautics Company, a division of Lockheed Martin Corporation (Lockheed), alleging disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subds. (a), (m), (n)),[1] and wrongful termination in violation of public policy. Gelfo was laid off as part of a reduction in force while suffering from a workplace injury. Lockheed later offered Gelfo a different position, but rescinded its offer after determining medical restrictions imposed as a result of Gelfo's back injury rendered him unable to perform the essential functions of the new position, and no reasonable accommodation was possible.

The trial court found the common law cause of action for wrongful termination in violation of public policy was time-barred, and granted Lockheed's motion for summary adjudication as to that cause of action. After the parties rested following a jury trial on the remaining issues, the court granted partially Lockheed's motion for directed verdict. It concluded: (1) Gelfo was not "actually" disabled; (2) Lockheed owed no duty to provide a reasonable accommodation to an applicant who was not "actually" disabled; (3) Lockheed owed no duty to engage in an informal interactive dialogue with an applicant or employee who was not "actually" disabled; and (4) Gelfo failed to establish an entitlement to punitive damages. The sole cause of action submitted to the jury alleged Lockheed violated FEHA by refusing to hire Gelfo based on its perception he was physically disabled. (§ 12940, subd. (a).) The jury returned a verdict against Gelfo.

We conclude the trial court correctly determined the common law tort claim was time-barred, and Gelfo failed to demonstrate an entitlement to punitive damages. We also conclude the trial court did not err in finding Gelfo was not "actually" physically disabled, based on his express concessions to that effect. However, the court erred in failing to determine, as a matter of law, that Lockheed regarded Gelfo as physically disabled, and compounded the error by submitting an erroneous instruction and verdict form to the jury. Finally, we conclude an employer must engage in an informal interactive process aimed at effecting a reasonable accommodation, and provide a necessary and reasonable accommodation to an applicant or an employee whom it regards as physically disabled.

---

[1] All statutory references are to this code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Gelfo's employment history with Lockheed and the workers' compensation action.*

Gelfo began working for Lockheed as a metal fitter in 1980. He was laid off in 1984, rehired in 1997, and later promoted to senior metal fitter. Throughout his employment, Gelfo belonged to a labor union that was party to a collective bargaining agreement (CBA) with Lockheed.

In September 2000, Gelfo injured his lower back at work. Although Gelfo continued to work, he retained counsel, filed a workers' compensation claim, and began seeing Dr. Brent Pratley, an orthopedic surgeon. Gelfo was laid off in October 2000. Under the terms of the CBA, Gelfo was placed on a recall list making him automatically eligible for rehire as a metal fitter or in a related job classification for up to five years.

In November 2000, Pratley diagnosed Gelfo as "permanent and stationary" for workers' compensation purposes.[2] Pratley restricted Gelfo from heavy lifting, bending or stooping. In May 2001, Pratley released Gelfo to return to his position with a restriction on repetitive lifting of items over 50 pounds. However, Lockheed had no metal fitter positions available at the time and Gelfo was not recalled.

In June 2001, at Lockheed's insistence, Gelfo underwent a qualified medical evaluation (QME), conducted by Dr. Gerald Paul, in connection with the workers' compensation action. Gelfo told Paul his pain had diminished, but he continued to experience tingling and discomfort in his lower back. On July 3, 2001, Paul issued a report concluding that Gelfo's injury was "permanent and stationary," and that Gelfo was "permanently disabled" and precluded from performing "heavy work." Paul deemed Gelfo a "qualified injured worker."

Pratley reexamined Gelfo in September 2001. Gelfo told Pratley he had difficulty sitting or standing for "any great length of time," and found it hard to "bend over and lift." Gelfo also said it was periodically necessary for him to wear a back brace in order to stand for any length of time, since he continued to experience varying degrees of pain during certain activities and numbness in his leg. Based upon his reexamination, Pratley concluded Gelfo

---

[2] Under workers' compensation law, a disability is considered "permanent and stationary" once an employee reaches the point at which he or she is no longer making improvement, or the employee's condition has been stationary for a reasonable period of time. (See *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 220, fn. 2 [87 Cal.Rptr.2d 487]; *Chavira v. Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600].)

was a "qualified injured worker" who had lost approximately 75 percent of his pre-injury capacity for lifting. Pratley did not recommend any specific workplace modifications or preclusions, but said Gelfo should do "no heavy lifting, no repetitive bending, and no prolonged sitting or standing." Pratley said Gelfo would not be able to return to his position as a metal fitter, and recommended his enrollment in a vocational rehabilitation program. Gelfo participated in a vocational rehabilitation program from October 2001 to January 2002.

During this same period from late 2001 until early 2002, Gelfo participated in a number of strenuous physical activities which left him "feeling fine" and were not impeded by his back injury. Activities included daily bike rides, long walks, activities with his children and yard work. Gelfo's wife testified that, from 2001 through 2002, Gelfo's lifestyle was not impacted by his back injury. Gelfo himself said that, by February 2002, he felt that, "physical[ly] . . . there was nothing that [he] couldn't do."

Gelfo's workers' compensation action was settled in January 2002. His injuries were deemed permanent and stationary, and he received a permanent disability rating of 42.2 percent and an award of approximately $36,000.

2. *Gelfo completes Lockheed's training program and is offered a job as a plastic parts fabricator.*

In mid-September 2001, Lockheed invited Gelfo to participate in a composite training class (training). The class was designed to train each participant to be a plastic parts fabricator and assembler (fabricator). Lockheed's invitation informed participants the company anticipated job openings by the completion of the training, but noted "completion of the class [did] not guarantee employment." Gelfo did not tell anyone connected with the training he was involved in an active workers' compensation action, had any physical limitations, or was under any workplace restrictions.

The training began on October 22, 2001. It ran for 10 weeks, two days a week, three hours a day. Each training class involved "hands on" instruction and classroom lessons. During the "hands on" portion, Gelfo performed the regular physical duties of a fabricator, including bending, stooping, sitting and standing, all of which occurred in a simulated setting. The tools used and projects completed by trainees were significantly smaller than those employed and completed by actual fabricators, and the work was performed on tables rather than a shop floor. Gelfo was able to complete the training and perform the required tasks without adverse consequences to his back. At a graduation luncheon on February 12, 2002, Lockheed offered each trainee a position as a fabricator. Lockheed did not mention its job offers were contingent upon the

trainees' obtaining a security and a medical clearance. Based on his past experience with the company, Gelfo knew he would be required to obtain a security clearance. For previous positions, Gelfo also had been required to pass a medical examination.

### 3. *Gelfo's offer is revoked.*

On February 14, 2002, Erica Matthews, an employee in Lockheed's Labor Relations Department, called Gelfo to inform him Lockheed had revoked his job offer. Matthews told Gelfo a review of his file revealed medical restrictions imposed by his physician that were incompatible with the physical demands of the fabricator position.

At the time, Gelfo said his back "[felt] great" and he believed there was "nothing that [he] couldn't do." Gelfo told Jan Taylor, who was handling his workers' compensation action on Lockheed's behalf, "that he really didn't have any limitations." Gelfo also went to Pratley, told him his back felt better and was not bothering him as it had before, and said he felt able to perform the fabricator job without restrictions. Gelfo said Pratley agreed the work restrictions were no longer necessary. Gelfo claimed he obtained a complete release from Pratley's office on February 11, 2002. However, Gelfo said his attorney had advised against providing it to the company. After February 2002, Gelfo had no further discussions with Lockheed regarding the fabricator position or any workplace accommodation until he received a letter from the company in July 2002.

In early July, Lockheed's placement review committee (committee) met to consider whether an accommodation was possible to enable Gelfo to perform the fabricator job, consistent with the restrictions in his medical file.[3] To facilitate the process, the committee had earlier forwarded a job description to Joe Ruggles, the manager in charge of the fabricator position to obtain a breakdown of the position's essential and nonessential functions, and an estimate of the time spent performing each function. The committee discussed the matter, reviewed a summary of the Pratley and Paul reports prepared by Lockheed's medical unit, compared the reports' conclusions with Ruggles's assessment and job description, and considered possible accommodations. The committee consulted with Ted Santos, Lockheed's in-house physician, to obtain clarification of terms in the doctors' reports, and reviewed a summary of Pratley's deposition testimony given in the workers'

---

[3] The committee, which is part of Lockheed's equal opportunity programs department, meets with managers who have indicated they cannot accommodate an individual's workplace limitations. The committee reviews the requirements of a particular job and assesses the possibility of job modifications or reassignment of duties within an employee's classification to determine if the individual's medical restrictions can be accommodated.

compensation action.[4] The committee determined Lockheed could accommodate Gelfo's lifting restriction. However, it determined the company could not accommodate Gelfo's other restrictions, and no reasonable accommodation or modification was possible which would permit him to perform the work of a fabricator or any other available position within his classification.

On July 12, 2002, Shirley Harbeson, Lockheed's senior manager of equal opportunity programs and the committee's chair, wrote to inform Gelfo of the company's decision. Her letter indicated Lockheed's belief that Gelfo was restricted from "bending, stooping, lifting, pushing, pulling, climbing, or other activities that involve comparable physical effort," "lifting heavy objects over 50 lbs.," and any prolonged sitting or standing. Harbeson told Gelfo Lockheed could accommodate his heavy lifting restriction, but was not able to accommodate his other physical limitations because the job description required him to perform certain prohibited tasks for three to six hours a day.[5] Harbeson invited Gelfo to notify Lockheed if he became aware of a reasonable accommodation that would permit him to perform the essential functions of a fabricator, consistent with his medical restrictions.

On July 24, 2002, Gelfo wrote to Lockheed requesting that the company reconsider its decision. Gelfo said Lockheed was misinformed about his medical restrictions, and reiterated he had successfully completed the training without incident.[6] Gelfo informed Harbeson he and his doctor agreed he could perform the job. Gelfo also told Harbeson he had recently accepted a position with another company that required him to perform the same functions as a fabricator and was currently performing the same job functions without accommodation or incident.

Harbeson responded to Gelfo's letter on September 4, 2002. She noted her earlier letter had mistakenly relied on an outdated "limits" list. Nonetheless, based on the Pratley and Paul reports and Pratley's deposition testimony, Lockheed adhered to the view that Gelfo's inability to sit or stand for more than three hours a day was a physical limitation for which no reasonable accommodation was available.

---

[4] In that deposition, Pratley testified Gelfo could not perform the functions of a fabricator.

[5] Those tasks were bending at the neck and waist, kneeling, twisting at the neck and waist, leaning, repetitive use, manipulation, and pushing and pulling of hands.

[6] Gelfo spoke with Harbeson and one of her employees on two occasions in July, repeating his claim to have an unequivocal medical release freeing him to return to work without restrictions. Harbeson testified Gelfo refused to furnish the release on advice of counsel. Gelfo testified he gave the release to a Lockheed representative and "certain people," and also sent it by certified mail to Harbeson and one of her employees. No one at Lockheed ever received the release.

After exhausting his administrative remedies, Gelfo filed this action on March 30, 2003. He alleged causes of action for: (1) disability discrimination in violation of FEHA; (2) failure to accommodate in violation of FEHA; (3) failure to engage in timely good faith interactive process in violation of FEHA; and (4) wrongful termination in violation of public policy.

In due course, Lockheed moved for summary judgment or, in the alternative, summary adjudication, arguing the common law cause of action for wrongful termination in violation of public policy was time-barred. Summary adjudication was granted.

A six-day jury trial was conducted in July 2004 on the three remaining claims. After the parties rested, Lockheed sought a directed verdict on all causes of action and the claim for punitive damages. The motion was partially granted, and all but one portion of Gelfo's first cause of action for disability discrimination was dismissed. By directed verdict, the trial court found Gelfo did not have an "actual" disability. Based on that finding, the court concluded Lockheed had no legal duty to provide a reasonable accommodation to Gelfo or to engage in an interactive dialogue with him, and dismissed his second and third causes of action. The court also found Gelfo failed to establish an entitlement to punitive damages. The sole claim remaining for the jury's determination was whether Lockheed violated FEHA by refusing to rehire Gelfo in February 2002 because it "regarded" him as a person with a physical disability.

Following deliberations, the jury returned a special verdict stating Lockheed did not "mistakenly believe that [Gelfo's] low back injury limited his ability to work." From a judgment entered in favor of Lockheed, this appeal ensued.

## DISCUSSION

1. *Gelfo's cause of action for wrongful termination in violation of public policy is time-barred.*

Lockheed sought and obtained summary adjudication on Gelfo's common law cause of action for wrongful termination in violation of public policy because it was barred by the statute of limitations. The ruling was correct.

Gelfo was laid off from his position as a metal fitter in October 2000 as part of a reduction in force at Lockheed. Gelfo does not claim his layoff was discriminatory or unlawful in any respect. Nor does he claim any reason to believe Lockheed's layoff decision was anything other than "final." Nonetheless, Gelfo argues that, because the CBA gave him a right of recall for five

years, he remained technically employed by Lockheed when it refused to place him in the fabricator position in February 2002. Gelfo's argument lacks merit.

Gelfo's employment at Lockheed ended when he was laid off in October 2000. Under the express terms of the CBA, "[t]he word 'layoff' refers to the *termination* of an employee from the active payroll of the Company as a reduction of the total number of people within a classification in the Company. . . ," and "[l]aid-off employees are *rehired* from the recall list in order of seniority. . . ." Gelfo concedes he has no reason to believe his October 2000 layoff was anything other than a final decision terminating his employment as a Lockheed metal fitter.[7] Moreover, the right of recall under the CBA was limited to the position Gelfo held when he was laid off or to a job classification he had held before. The fabricator position does not fall within either category, and Gelfo concedes he was not recalled when offered the position. Because Gelfo ceased being a Lockheed employee in October 2000, his claim for wrongful discharge, filed nearly two and one-half years later, was untimely.

Alternatively, for the first time on appeal, Gelfo asserts that, even if he ceased to be an employee following his layoff, the common law cause of action was timely because it was asserted within two years after Lockheed breached an alleged employment contract with Gelfo by withdrawing its job offer. According to Gelfo, Lockheed extended an employment offer when it promised positions to training participants if openings were available upon their successful completion of the training class. Gelfo accepted this offer, reasonably anticipating obtaining a new position. He performed his contractual obligations by completing the training, in detrimental reliance on the company's promise. Positions were available when Gelfo completed the training. A position was offered to him in early February 2002, which he accepted, thereby becoming a Lockheed employee. This action, filed within two years of Lockheed's allegedly wrongful refusal to perform its contractual obligations, was therefore timely. This theory is both weak and, more fundamentally, untimely. It was not asserted during the 18 months this litigation was pending in the trial court, and may not be asserted now. The

---

[7] The term "layoff" is not generally defined. However, at least one industry defines the term consistent with the common understanding accorded here and with its definition under the CBA. (See, e.g., Lab. Code, § 201.5 [in the motion picture industry, " 'layoff' means the termination of employment of an employee where the employee retains eligibility for reemployment with the employer"].) This definition fits Gelfo's analogous circumstance. In other contexts, courts reason a layoff due to a reduction in force may, on proper showing, constitute the basis for a common law tort or statutory claim of discriminatory termination. (See, e.g., *O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 579–580 [69 Cal.Rptr.2d 389] [noting an economically necessary layoff due to reduction in force may violate antidiscrimination laws if the layoff is based on illegal criteria].)

theory is deemed waived. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844 [30 Cal.Rptr.2d 697] [a party is not free to change his theory of recovery or relief on appeal].)

2. *The trial court's determination that Gelfo was not "actually" physically disabled was not erroneous.*

██ As disjunctively defined by FEHA, a person is "physically disabled" if, among other things, the individual (1) has a physiological condition that both (a) affects a specific bodily system and (b) limits a major life activity; (2) has a "record or history of" such a physiological condition; or (3) is "regarded or treated by" the individual's employer as having, or having had, any condition that makes achievement of a major life activity difficult, or as having, or having had, a physiological condition that is not presently disabling, but that may become so. (§ 12926, subd. (k)(1)(A), (B), (3), (4), (5).) A physiological condition "limits" a major life activity if it makes difficult the achievement of the major life activity. (§ 12926, subd. (k)(1)(B)(ii).) The term "major life activity" is broadly construed, and includes physical and social activities and working. (§ 12926, subd. (k)(1)(B)(iii).)

Gelfo prosecuted this action on the alternative theories that he either had an "actual" qualifying physical disability or that Lockheed "regarded" him as having one.[8] On appeal, Gelfo insists the trial court erred in granting Lockheed's motion for a directed verdict on the portion of his FEHA claim of employment discrimination based on an actual physical disability. Gelfo maintains the issue should have been submitted to the jury for determination. Lockheed argues the evidence was uncontradicted, and the directed verdict on this aspect of Gelfo's claim was proper. "A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629–630 [85 Cal.Rptr.2d 386]; *Newing v. Cheatham* (1975) 15 Cal.3d 351, 358–359 [124 Cal.Rptr. 193, 540 P.2d 33].) This court decides de novo whether sufficient evidence was presented to

---

[8] Gelfo has never asserted he was physically disabled because Lockheed knew he had "a record or history of" a covered physiological condition, and may not do so now. (See *Cinnamon Square Shopping Center v. Meadowlark Enterprises, supra*, 24 Cal.App.4th at p. 1844.)

FEHA does not employ the term "actual" disability. We use the term for clarity to distinguish a circumstance involving an individual who is or may be deemed physically disabled because he or she satisfies both requirements of the first prong of FEHA's definition, from those involving an individual considered physically disabled under the "regarded as" and/or "record of" definitional prongs.

withstand a directed verdict. (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210 [77 Cal.Rptr.2d 660].) In that sense, we stand in the shoes of the trial court. Applying this legal standard, we conclude Lockheed is correct.

To qualify as a member of the protected class under FEHA, Gelfo must demonstrate his impairment constitutes a disability according to the statutory definition. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 257 [102 Cal.Rptr.2d 55] (*Jensen*).) It is insufficient for Gelfo simply to allege a disability or to identify an injury or physical condition. To proceed as a physically disabled person under the first prong of the statutory definition, Gelfo must demonstrate his injury or physical condition (in this instance, a low back injury, whose existence is undisputed) makes "difficult" the achievement of work or some other major life activity. Gelfo failed to make this showing.

Indeed, Gelfo endeavored to prove the opposite. At trial, he readily admitted that, as early as February or March 2001, he no longer believed he required any medical restrictions. At that time, Gelfo testified he was regularly "out and about" all day and did not need to rest his back. He regularly rode a bike, took long walks, and performed yard work without irritating his back. Notwithstanding contrary representations made to Pratley and Paul during the same time period, Gelfo testified that throughout the summer of 2001 and into early 2002, he could sit for prolonged periods, bend more than once or twice an hour, stand or walk for up to seven hours per day, and crouch or bend over a table without experiencing discomfort. Gelfo said his "back was fine" from August through October 2001, when he began the training class. When offered the fabricator position in February 2002, Gelfo was doing so well he "felt like there was nothing that [he] couldn't do."

With respect to his ability to engage in the major life activity of working, the trial court correctly observed Gelfo was firmly convinced and unwavering in his belief he could have performed the job Lockheed denied him. When told he had been denied the fabricator position due to medical restrictions imposed in his workers' compensation action, Gelfo told Taylor "he really didn't have any limitations," and purportedly returned to Pratley who agreed the restrictions should be lifted. Later, Gelfo told Lockheed he was performing duties identical to those required of a fabricator for another employer, without accommodation, injury or incident. In short, Gelfo conceded he felt he could do anything. The trial court properly precluded him from claiming he had a qualifying actual physical disability, based on his "clear, unequivocal, uncontroverted testimony . . . that he does not have a disability." Gelfo's testimony has the conclusive effect of a judicial admission that his physical condition did not render difficult the achievement of any

major life activity. A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case. (*Parker v. Manchester Hotel Co.* (1938) 29 Cal.App.2d 446, 458 [85 P.2d 152]; *Smith v. Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 269 [147 Cal.Rptr. 1].) This principle has particular force when the admission hurts the conceder's case. An express concession against one's interest is regarded as highly competent, credible evidence. (See *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768].) Gelfo may not repudiate his judicial admission on appeal. (Cf. *People v. Pijal* (1973) 33 Cal.App.3d 682, 697 [109 Cal.Rptr. 230]; *People v. Peters* (1950) 96 Cal.App.2d 671, 677 [216 P.2d 145].)

Gelfo's argument that Pratley's report and testimony provide sufficient contradictory evidence that his injury was "permanent and stationary" and the issue of "actual" disability should have gone to the jury is not persuasive. The term "permanent and stationary" is workers' compensation terminology which signals only that an individual's injury has stabilized and the person is no longer making improvement. (See *Hanson v. Lucky Stores, Inc., supra*, 74 Cal.App.4th at p. 220, fn. 2.) As Pratley testified, the term "doesn't mean that the person is never going to get better." Rather, the restrictions imposed for a permanent and stationary worker are prophylactic, intended to help avoid reinjury. Indeed, Pratley observed persons with back injuries similar to Gelfo's can and often do "get better." Thus, evidence that Gelfo's back injury was permanent and stationary is not inconsistent with his representations that, when the fabricator position was offered to him, his back felt fine and he believed there was nothing he could not do. The trial court therefore did not erroneously direct a verdict as to that aspect of Gelfo's claim of discrimination premised on an "actual physical disability."

3. *Having found as a matter of law that Gelfo was not "actually" disabled, the trial court was obligated to make a similar finding with respect to the "regarded as" aspect of Gelfo's disability claim.*

Failing to establish an "actual" physical disability, Gelfo was left to argue to the jury that Lockheed unlawfully refused to hire him because it "regarded" him as a person with a disabling physical condition or a physical condition that might make the achievement of a major life activity difficult in the future. (§§ 12926, subd. (k)(4), (5), 12940, subd. (a)(1).) Gelfo maintains the jury was erroneously denied an opportunity to decide whether Lockheed perceived him as a person with a physical disability because the trial court required him to "elect" whether to prosecute the action as an individual who was actually disabled or as one who had merely been perceived as such. The court forced no such election. On the contrary, it acknowledged Gelfo was legally entitled to proceed on alternative theories under FEHA. Notwithstanding that entitlement, the court found Gelfo failed to establish the foundational

facts necessary to proceed on the basis that he was actually disabled. The conclusion was correct. Nevertheless, for reasons other than those advanced by Gelfo, we agree the jury was erroneously instructed.[9]

After determining, based on his own admissions, that Gelfo was not "actually physically disabled," the trial court was obligated to determine, based on Lockheed's similar factual admissions, that the company had in fact "regarded" him as such.[10] Lockheed never maintained its decision not to hire Gelfo was premised on anything other than its belief that medical restrictions imposed as a result of Gelfo's lower back injury rendered him unable to perform the essential functions of a fabricator. Lockheed's consistent position that it withdrew Gelfo's job offer because it perceived he suffered from a disabling physical condition limiting his ability to perform is the functional equivalent of an admission the company withdrew the offer because it "regarded" him as limited in his ability to work.[11] (See *Rodriguez v. Conagra Grocery Products Co.* (5th Cir. 2006) 436 F.3d 468, 480 [reaching a similar result under the ADA after the court found plaintiff was not actually disabled based on his admissions, but also concluded there was no question his employer had perceived him as such based on its unequivocal statement that it withdrew plaintiff's job offer after plaintiff's preemployment medical exam

---

[9] Following oral argument, the parties were directed to submit supplemental briefs addressing the issues of whether the trial court (1) should have found, as a matter of law, that Lockheed "regarded" Gelfo as disabled; and (2) erred in modifying jury instruction Judicial Council of California Civil Jury Instructions (2006 ed.), CACI No. 2540 and the verdict form by inserting the word "mistakenly."

[10] Gelfo raised this point repeatedly throughout the trial, and unsuccessfully moved for directed verdict on this issue once the court granted Lockheed's directed verdict on the issue of actual disability.

[11] We reject the argument, asserted in Lockheed's supplemental briefs, that the company did not "regard" Gelfo at all, but denied him the job solely because he failed to remove all the medical restrictions imposed as a result of his workers' compensation action as well as its fear of exposure under Labor Code section 4553. Lockheed's assertion it feared liability based on its "serious and willful misconduct" if it were to rehire Gelfo, thereby potentially subjecting him to "deliberate or reckless injuries," lacks merit. No employer proceeding in good faith under circumstances such as those at bar would find itself in such a bind. Moreover, Lockheed cannot simply point to the medical reports in Gelfo's file, and automatically absolve itself of liability under FEHA. A policy requiring an employee be "100 percent healed" before returning to work is a per se violation even under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) (ADA), because it permits an employer to avoid the required individualized assessment of the employee's ability to perform the essential functions of the job with or without accommodation. (*McGregor v. National R.R. Passenger Corp.* (9th Cir. 1999) 187 F.3d 1113, 1116.) Also under FEHA, as under the ADA, "an employer cannot slavishly defer to a physician's opinion without first pausing to assess the objective reasonableness of the physician's conclusions." (*Gillen v. Fallon Ambulance Service, Inc.* (1st Cir. 2002) 283 F.3d 11, 31.) This is particularly true in a case such as this. The reports on which Lockheed premised its refusal to hire were based, not on an individualized assessment or testing, but on the workers' compensation doctors' cursory, generalized opinions about prophylactic measures aimed at avoiding potential injuries to someone with a back injury like Gelfo's, which might occur by one performing the functions of fabricator. (See *id.* at p. 32.)

allegedly showed he had "uncontrolled diabetes"].) Accordingly, no factual question remained for the jury to decide. Gelfo satisfied FEHA's definition. To paraphrase the statute, a person is disabled if he is "regarded or treated by the employer . . . as having, or having had, any physical condition that [currently] makes [or, in the future may make] achievement of a major life activity difficult." (§ 12926, subd. (k)(4), (5).) On this record, Lockheed unquestionably regarded Gelfo as a person with a back injury sufficiently debilitating that it either made his ability to work as a fabricator difficult when he was denied the job, or was likely to do so in the future. Accordingly, the undisputed issue of whether Lockheed "regarded" Gelfo as physically disabled should not have been submitted to the jury in the first place.

4. *The legal error was compounded when the jury received an erroneous and confusing instruction and verdict form.*

The trial court erred by failing to decide the definitional issue whether Lockheed regarded Gelfo as physically disabled as a matter of law. The error caused the submission of the issue to the jury, a problem which was compounded when the court modified CACI No. 2540 and the verdict form, in a confusing and erroneous way.

■ Typically, in a case alleging an employer unlawfully refused to hire an applicant based on a perception of physical disability, CACI No. 2540 instructs the jury the plaintiff must prove that:

Defendant was an employer;

Plaintiff applied to defendant for a job;

Defendant thought plaintiff's physical condition limited his ability to work;

Defendant refused to hire plaintiff;

Plaintiff's physical condition was a motivating reason for the refusal to hire;

Plaintiff was harmed; and

Defendant's decision was a substantial factor in causing plaintiff's harm. (CACI No. 2540 (Jan. 2006).)

In this action, according to the modified version of CACI No. 2540 it received, the jury was told Gelfo was required to establish that:

Plaintiff applied to defendant for a job;

Defendant *mistakenly* believed plaintiff's low back injury limited his ability to work;

Plaintiff was able to perform the essential job duties;[12]

Defendant refused to hire plaintiff;

Defendant's belief that plaintiff had a limiting condition was a motivating reason for the refusal to hire;

Plaintiff was harmed; and

Defendant's decision not to hire was a substantial factor in causing plaintiff's harm.

The jury also received a verdict form, modeled on the modified CACI Instruction No. 2540 and CACI VF No. 2508, which read, in pertinent part:

**"DISABILITY DISCRIMINATION—"REGARDED AS"— DISPARATE TREATMENT"**

"We answer the questions submitted to us as follows:

"1. Was Plaintiff an applicant to Defendant for a job?

"___Yes___No

---

[12] A plaintiff prosecuting a FEHA claim based on an "actual" physical disability is also required to prove that "Plaintiff was able to perform the essential job duties with reasonable accommodation for his condition." This element is not part of a prosecution based on a perceived disability, and it was error to instruct on this element in this action. (See Use Notes to CACI No. 2540.)

Eliminating this element from plaintiff's proof does not preclude the inquiry entirely, subjecting an employer to the functional equivalent of strict liability. It simply places the burden of demonstrating an applicant or employee was unable to perform, even with an accommodation, on the employer, with whom it belongs. (See § 12940, subd. (a)(1) ["This part does not prohibit an employer from refusing to hire . . . an employee with a physical . . . disability, or subject an employer to any legal liability resulting from the refusal to employ . . . an employee with a physical . . . disability, where the employee, because of his or her physical . . . disability, is unable to perform his or her essential duties even with reasonable accommodations . . . ."].)

"If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

"2. Did Defendant *mistakenly* believe that Plaintiff's low back injury limited his ability to work?

"___Yes___No

"If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form." (Italics added.)

The jury unanimously answered "yes" to the first question, and "no" to the second. The jury then ceased deliberating, and signed and returned the verdict.

The problem with the instruction and verdict form lies with addition of the word "mistakenly" to the second element of proof in the instruction and question No. 2 of the verdict form. By adding "mistakenly," the legal standard was impermissibly altered, and the jury given a confusing question-naire and implicitly forced to decide an irrelevant issue.[13] The sole issue under the "regarded as" definitional prong is whether the employer believes an applicant or employee is physically disabled. By adding the modifier "mistaken" to the instruction, the jury was asked to decide whether Lockheed believed Gelfo was actually disabled *and* whether that belief was wrong. To respond to the question, the jury was implicitly compelled to decide if Gelfo had an actual disability. That factual inquiry had already been resolved by the court.

More importantly, forcing a plaintiff to show an "actual disability" to prevail on a "regarded as" theory is antithetical to the purpose of the statute.

---

[13] Two constructions of question No. 2 are logically plausible. The first is based on the implicit premises that (1) Gelfo's back injury did not limit his ability to engage in a major life activity, but (2) when he was denied the fabricator position, Lockheed believed Gelfo's back injury limited his ability to engage in the major life activity of work. The issue for the jury was: Was Lockheed's belief mistaken? To be consistent with the facts as found by the trial court, the jury's answer to this question would have been "yes." It was not.

But the same question could rest on different implicit premises, namely: (1) Gelfo's low back injury limited his ability to work as a fabricator; and (2) Lockheed believed Gelfo's low back injury limited his ability to work as a fabricator. The issue for the jury: Was Lockheed's belief mistaken? The jury's "no" answer meant it concluded Lockheed was correct to believe Gelfo's low back injury limited his ability to work, a conclusion directly contrary to the court's finding.

Lockheed posits an alternative construction in its supplemental brief. However, that construction is contingent on the jury's awareness the trial court had determined Gelfo was not actually disabled, a finding about which it was not informed.

In essence, it renders "regarded as" definitional protection available only to those who are actually disabled and who do not need the protection. Lockheed conceded it rescinded its job offer on the belief that work restrictions engendered by Gelfo's back injury limited his ability to perform the essential functions of a fabricator. In view of Lockheed's explicit concession and the trial court's factual findings, whether Lockheed's perception was mistaken was irrelevant.

Lockheed asserts the statute's "regarded as" protection is limited to persons who are denied or who lose jobs based on an employer's reliance on the "myths, fears or stereotypes" frequently associated with disabilities. Some support exists for this view. (See *Diffey v. Riverside County Sheriff's Department* (2000) 84 Cal.App.4th 1031, 1037 [101 Cal.Rptr.2d 353] ["[T]he purpose of the 'regarded-as' prong is to protect individuals rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities"], disapproved on another point by *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220].) By delineating the protections afforded in section 12926 to persons "regarded as" disabled, the Legislature intended "to provide protection when an individual is erroneously or mistakenly believed to have any physical or mental condition that limits a major life activity." (§ 12926.1, subd. (d).) However, the statutory language does not expressly restrict FEHA's protections to the narrow class to whom Lockheed would limit its coverage. To impose such a restriction would exclude from protection a large group of individuals, like Gelfo, with more mundane long-term medical conditions, the significance of which is exacerbated by an employer's failure to reasonably accommodate. Both the policy and language of the statute offer protection to a person who is not actually disabled, but is wrongly perceived to be. The statute's plain language leads to the conclusion that the "regarded as" definition casts a broader net and protects *any* individual "regarded" or "treated" by an employer "as having, or having had, any physical condition that makes achievement of a major life activity difficult" or may do so in the future. (§ 12926, subd. (k)(4), (5).) We agree most individuals who sue exclusively under this definitional prong likely are and will continue to be victims of an employer's "mistaken" perception, based on an unfounded fear or stereotypical assumption. Nevertheless, FEHA's protection is nowhere expressly premised on such a factual showing, and we decline the invitation to import such a requirement.

Given our conclusion on the directed verdict on the definitional aspect of Gelfo's claim of discrimination based on a perceived disability, the discussion of instructional error is obviously dicta. We include it to help guide the trial court on remand in addressing the remaining elements of that cause of action. We agree with Gelfo that, on this record, the first four elements of model instruction CACI No. 2540 are established. But no jury has yet had an

opportunity to resolve the factual issues of animus, harm, and the substantiality of Lockheed's conduct as a factor in causing any harm Gelfo may have suffered.[14] Those matters remain to be established by the final three elements of CACI No. 2540.[15]

5. *An employer must explore reasonable accommodations for and engage in an interactive dialogue with applicants or employees whom it regards as disabled.*

 In addition to a general prohibition against unlawful employment discrimination based on disability, FEHA provides an independent cause of action for an employer's failure to provide a reasonable accommodation for an applicant's or employee's known disability. (§ 12940, subds. (a), (m).) "Under the express provisions of the FEHA, the employer's failure to reasonably accommodate a disabled individual is a violation of the statute in and of itself." (*Jensen, supra*, 85 Cal.App.4th at p. 256; see *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 357 [118 Cal.Rptr.2d 443] [same].) Similar reasoning applies to violations of Government Code section 12940, subdivision (n), for an employer's failure to engage in a good faith interactive process to determine an effective accommodation, once one is requested. (§ 12940, subd. (n); *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837].)

Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954 [62 Cal.Rptr.2d 142].) Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. (See *Jensen, supra*, 85 Cal.App.4th at p. 266.) While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other.

---

[14] Gelfo need not show Lockheed "had it in for him." To support a claim of disability discrimination, a plaintiff need only show "animus" directed at the disability. (See, e.g., *Rodriguez v. Conagra Grocery Products Company, supra*, 436 F.3d at p. 480 [ADA].) It is of no moment that the employer has no ill will against the plaintiff (or anyone else with a bad back).

[15] We reject Lockheed's argument that Gelfo may not now raise a claim of instructional error. It is well established that prejudicial instructional error may be raised for the first time on appeal. (*Bishop v. Hyundai Motor America* (1996) 44 Cal.App.4th 750, 760 [52 Cal.Rptr.2d 134]; *Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133].)

Relying on federal authorities interpreting the ADA, Lockheed maintains the right to reasonable accommodation flows only to an applicant or employee who is "actually" disabled. Lockheed also asserts that requiring an employer to participate in an interactive process with an individual "regarded as" disabled promotes form over function. Such a requirement, in its view, compels employers to engage in an expensive but futile process, because employees merely "regarded as" disabled do not qualify for a reasonable accommodation. (See *Gilday v. Mecosta County* (6th Cir. 1997) 124 F.3d 760, 764 [a person without an actual disability needs no accommodation].) The trial court agreed and directed verdicts against Gelfo on his causes of action for "failure to accommodate" and "failure to engage in the interactive process." The directed verdicts were a mistake.

On these issues, which are novel to California and on which the federal courts are divided, we conclude that employers must reasonably accommodate individuals falling within any of FEHA's statutorily defined "disabilities," including those "regarded as" disabled, and must engage in an informal, interactive process to determine any effective accommodations.

a. *An employer must reasonably accommodate an applicant or employee whom it regards as disabled.*

■ So far, only federal courts have considered the issues before us, and only under federal law. Those decisions provide substantial guidance. Like FEHA, the ADA requires an employer to make "reasonable accommodation [for] the known physical or mental" condition of an employee or applicant. (42 U.S.C. § 12112(b)(5)(A).) In interpreting the ADA, the Eighth Circuit held employees who are regarded as disabled by their employers have no right to a reasonable accommodation. (*Weber v. Strippit, Inc.* (8th Cir. 1999) 186 F.3d 907, 915–917 (*Weber*).) In *Weber*, the court found that application of the reasonable accommodation requirement in cases of perceived disability under the ADA "would lead to bizarre results" by entitling nondisabled employees to an accommodation denied to similarly situated employees based on their employers' misperceptions. (*Weber, supra*, 186 F.3d at pp. 916–917.)

The Ninth Circuit followed suit in *Kaplan v. City of North Las Vegas* (9th Cir. 2003) 323 F.3d 1226, 1232–1233 (*Kaplan*).[16] In *Kaplan*, a police officer,

---

[16] The Fifth and Sixth Circuits have reached similar conclusions, but the cases contain virtually no legal analysis on the issue. (See *Newberry v. East Texas State University* (5th Cir. 1998) 161 F.3d 276, 280; *Workman v. Frito-Lay, Inc.* (6th Cir. 1999) 165 F.3d 460, 467.)

We adopt the opposite view, as have the First, Third, Tenth, Eleventh and, to a limited extent, the Second Circuits. (See *Katz v. City Metal Co., Inc.* (1st Cir. 1996) 87 F.3d 26, 33; *Williams v. Philadelphia Housing* (3d Cir. 2004) 380 F.3d 751, 772–776 (*Williams*), cert. denied (2005) 544 U.S. 961 [161 L.Ed.2d 602, 125 S.Ct. 1725]; *Kelly v. Metallics West, Inc.*

unable to hold a gun or grasp objects with one hand, was misdiagnosed with rheumatoid arthritis. Based on the misdiagnosis, the employer believed the injury was permanent, concluded he would not be able to hold or use a gun effectively or perform other essential job functions, and fired him. While the court found Kaplan was not "actually disabled," it determined he was "regarded as" disabled because his employer believed he was permanently disabled by arthritis. Relying primarily on *Weber*, the court held "regarded as" plaintiffs are not entitled to a reasonable accommodation under the ADA. (*Kaplan, supra*, 323 F.3d at pp. 1232–1233.) The court acknowledged the ADA's definition of a "qualified individual with a disability" (i.e., those to whom reasonable accommodation is owed under the ADA) does not differentiate among the three disjunctive prongs of the "disability" definition. (*Kaplan*, at p. 1232.) Nonetheless, it concluded, "[t]he absence of a stated distinction . . . [was] not tantamount to an explicit instruction by Congress that 'regarded as' individuals are entitled to reasonable accommodations." (*Ibid.*) Because a formalistic reading of the plain language of the statute would lead to "bizarre results," courts must look beyond the literal language of the ADA.

*Kaplan* reasoned that, if "regarded as" plaintiffs are entitled to reasonable accommodations, "impaired employees would be better off under the statute if their employers treated them as disabled even if they were not." (*Kaplan, supra*, 323 F.3d at p. 1232.) Such a result would be "perverse and troubling" under a statute aimed at dispelling stereotypes. (*Ibid.*) An entitlement to a reasonable accommodation to "regarded as" plaintiffs would not motivate individuals to educate their employers about their true abilities or encourage employers to see their employees' true talents. Rather, it would confer on nondisabled employees a "windfall" by perpetuating employers' erroneous misperceptions about their limitations, and compel employers to squander resources better devoted to employees with actual disabilities who genuinely needed an accommodation. (*Ibid.*)

*Weber* and *Kaplan* were decided under the ADA. No published California case has considered whether an employer has a duty under FEHA to provide a reasonable accommodation to an applicant or employee who is not "actually" disabled, but is "regarded as" having a disability.[17] Because the ADA

---

(10th Cir. 2005) 410 F.3d 670, 675–676 (*Kelly*); *D'Angelo v. Conagra Foods, Inc.* (11th Cir. 2005) 422 F.3d 1220, 1235–1239 (*D'Angelo*); *Jacques v. DiMarzio, Inc.* (E.D.N.Y. 2002) 200 F.Supp.2d 151, 163–169 (*Jacques*), affirmed in pertinent part, 386 F.3d 192, 204.) The Fourth and Seventh Circuits have not yet taken a position. (See, e.g., *Cigan v. Chippewa Falls School Dist.* (7th Cir. 2004) 388 F.3d 331, 335.)

[17] Lockheed points to two California cases, *Jensen, supra*, 85 Cal.App.4th 245, and *Brundage v. Hahn* (1997) 57 Cal.App.4th 228 [66 Cal.Rptr.2d 830] (*Brundage*), to support its contention that FEHA requires an "actual," not merely a "perceived," disability to support a cause of action for failure to accommodate. Neither case advances its cause. *Jensen* never reached the issue after finding the plaintiff failed to establish a "regarded as" claim under either

and FEHA share the goal of eliminating discrimination, we often look to federal case authority to guide the construction and application of FEHA, particularly where parallel statutory language is involved. However, because FEHA "provides protections independent from those in the [ADA]" and "afford[s] additional protections [than the ADA]" (§ 12926.1, subd. (a)), state law will part ways with federal law in order to advance the legislative goal of providing greater protection to employees than the ADA. (See *Diaz v. Federal Express Corp.* (C.D.Cal. 2005) 373 F.Supp.2d 1034, 1053–1054.) To that end, we are unpersuaded by the reasoning of *Weber* and *Kaplan*, whose shortcomings are explored in the better-reasoned decision of *Williams, supra,* 380 F.3d 751, and its progeny.

In *Williams*, a police officer developed severe depression after 24 years on the police department and, as a result, was unable to carry a gun. As an accommodation, the officer requested a radio room assignment. The department refused the officer's request on the ground that if the officer were assigned to the radio room, he would have access to firearms and would work in close proximity to others who carried guns. (*Williams, supra,* 380 F.3d at p. 766.) The officer was denied the radio room assignment because his employer erroneously perceived that, not only could he not carry a gun, he could not be around others who did or have access to firearms due to his mental condition. (*Id.* at pp. 766, 776.) The officer was terminated. Suing under the ADA, the officer argued his employer regarded him as having limitations (the inability to have access to firearms or be around others carrying guns) in excess of his actual limitation (the inability to personally carry a gun) that resulted from his condition. (380 F.3d at pp. 766–767.)

The court held employees who are "regarded as" disabled are entitled to accommodation under the ADA. Turning first to a point acknowledged in passing in *Kaplan* and *Weber*, the court said: "[T]he statutory text of the ADA does not in any way 'distinguish between [actually] disabled and "regarded as" individuals in requiring accommodation.' [Citation.]" (*Williams, supra,* 380 F.3d at p. 774.)

*Williams* acknowledged the possibility, noted in *Kaplan* and *Weber*, that applying the reasonable accommodation requirement in favor of "regarded as" disabled employees could produce a "bizarre result." (*Williams, supra,* 380 F.3d at p. 774.) Nonetheless, that remote possibility provided "no basis for an across-the-board refusal to apply the ADA in accordance with the plain

---

the ADA or FEHA. (*Jensen, supra,* 85 Cal.App.4th at pp. 259–260.) While *Brundage* involved claims brought under both the ADA and FEHA, not only was the legal analysis in *Brundage* premised entirely on federal law, the court found the plaintiff was not "regarded as" disabled at the time she was fired. (*Brundage, supra,* 57 Cal.App.4th at pp. 235–236.)

meaning of its text."[18] (*Ibid.*) Moreover, legislative history and Supreme Court authority, which Congress specifically endorsed in crafting the "regarded as" prong of ADA's definition of "disability," reflect a congressional intent to protect "one who is 'disabled' by virtue of being 'regarded as' disabled in the same way as one who is 'disabled' by virtue of being 'actually disabled,' because being perceived as disabled 'may prove just as disabling.' " (*Williams, supra*, 380 F.3d at p. 774, quoting legislative history of the ADA [H.R.Rep. No. 101-485 (III), 1990 U.S. Code Cong. & Admin. News 445, 453]; see also *School Bd. of Nassau County v. Arline* (1987) 480 U.S. 273 [94 L.Ed.2d 307, 107 S.Ct. 1123].)

*Williams* also rejected the "windfall" theory posited in *Kaplan* and *Weber*. On the facts, the court noted that, had the employer not misperceived Williams's inability to be around guns due to his emotional condition, the radio room assignment would have been available to him just as it would have been to another similarly situated officer. Thus, "[t]he employee whose limitations are perceived accurately gets to work, while Williams is sent home unpaid. This is precisely the type of discrimination the 'regarded as' prong literally protects from . . . ." (*Williams, supra*, 380 F.3d at pp. 775–776.)

Arguments advanced in *Kaplan* and *Weber* also were examined and rejected in *Kelly*. After Kelly's discharge from the hospital for a pulmonary embolism, her employer refused to permit her to use oxygen at work; "he did not want the responsibility because she might 'fall over dead.' " (*Kelly, supra*, 410 F.3d at pp. 672–673.) Kelly was fired. It was undisputed that, with supplemental oxygen, Kelly could have performed the essential functions of her job. (*Id.* at p. 672.) Kelly sued on the theory she was "regarded as" disabled, and was denied reasonable accommodation on that basis. A jury agreed and awarded her $50,000. (*Id.* at p. 674.)

On appeal, the court rejected *Weber*'s concern that a literal application of the ADA would create a "bizarre result" affording more favorable treatment to employees regarded as disabled by their employers, than to those not similarly regarded. (*Kelly, supra*, 410 F.3d at pp. 675–676.) The court noted it

---

[18] In FEHA, the Legislature specifically addressed and eliminated the potentially "bizarre result" posited by *Weber* and *Kaplan*. The statute requires an employee and employer to engage in the interactive process in good faith. The purpose of the informal exchange of information is to determine effective reasonable accommodations, "if any," that might be made for an employee. (§ 12940, subd. (n).) Thus, as a result of discussions, if the employer determines an accommodation is unnecessary, none need be provided. This inquiry is different than whether a particular accommodation is "unreasonable" or poses an undue hardship. (§ 12940, subd. (m); Cal. Code Regs., tit. 2, §§ 7293.8, 7293.9.)

is "in the nature of *any* 'regarded as disabled' claim that an employee who seeks protections not accorded to one who is impaired but not regarded as disabled does so because of the additional component—'regarded as' disabled." (*Id.* at p. 676.) Thus, that "rationale provides no basis for denying validity to a reasonable accommodation claim." (*Ibid.*) The court also rejected the argument that accommodating perceived disabilities would " 'do nothing to encourage . . . employees to educate employers of their capabilities' or to 'encourage the employers to see their employees' talents clearly.' " (*Ibid.*, quoting *Weber, supra,* 186 F.3d at p. 917.) "The ADA is concerned with safeguarding the employee's livelihood from adverse actions taken on the basis of 'stereotypic assumptions not truly indicative of the individual ability' of the employee. . . . [T]he real danger is not that an employee will fail to educate an employer concerning her abilities, but that '[t]he employee whose limitations are perceived accurately gets to work, while [the employee perceived as disabled] is sent home unpaid.' " (*Kelly*, at p. 676, quoting *Williams, supra,* 380 F.3d at p. 775.) Stated differently, the ADA's educational function is actually advanced by providing accommodations to "regarded as" disabled employees because "an employer who is unable or unwilling to shed his or her stereotypic assumptions based on a faulty or prejudiced perception of an employee's abilities must be prepared to accommodate the artificial limitations created by his or her own faulty perceptions. In this sense, the ADA encourages employers to become more enlightened about their employees' capabilities, while protecting employees from employers whose attitudes remain mired in prejudice." (*Kelly*, at p. 676.) Finally, *Kelly* noted that, by failing to make any definitional distinction between an employee who was actually disabled and one who was merely regarded as disabled, Congress did not consider it inherently unreasonable to provide an accommodation for an employee whom an employer only regarded as disabled. (*Ibid.*; 42 U.S.C. § 12111(9).)

Based on similar reasoning, numerous other courts rejected the argument that courts are free to ignore a statute's plain language and conclude an employer has no duty under the ADA to provide an accommodation unless an employee is actually disabled. In *D'Angelo, supra,* 422 F.3d 1220, the court held, "an individual falling within the 'regarded as' category of disability under the ADA is entitled to a reasonable accommodation no less than an individual satisfying the actual-impairment definition of disability." (*Id.* at p. 1239.) *D'Angelo* also questioned whether a plain reading of the ADA would yield the "bizarre result" envisioned by *Weber* and *Kaplan*. First, it pointed out that *Weber*'s conclusion that providing an accommodation would produce a disparity " 'among *impaired but non-disabled* employees' " failed "to appreciate that the ADA defines individuals with impairments that do not substantially limit their ability to perform a major life activity, but that are nonetheless treated by the individual's employer as constituting such a

limitation, as *disabled.*" (422 F.3d at p. 1239, original italics.) In other words, " 'regarded as' plaintiffs are *not* 'impaired but non-disabled' individuals, but rather *are disabled* within the meaning of the statute." (*Ibid.*, original italics.) Moreover, when two employees have the same impairment (which does not rise to the level of an actual disability), but one employee is entitled to an accommodation to which the other is not, it is because the two are *not* similarly situated. The employee who receives statutory protection has suffered an adverse employment action; the other has not. (*Ibid.*)[19]

The legal analysis in *Williams, Kelly, D'Angelo* and *Jacques* is equally applicable in this case. For the reasons stated in those cases, we conclude the trial court erred in concluding an employer has no duty, as a matter of law, to provide a reasonable accommodation to an applicant or employee who is "regarded as" disabled under FEHA. As with its federal counterpart, FEHA's disjunctive definition of "physical disability" offers no statutory basis for differentiating among the three types of plaintiffs in determining which individuals are entitled to a reasonable accommodation. Moreover, the protections provided employees by FEHA are broader than those provided by the ADA. (§ 12926.1, subds. (a), (d)(1).) To further the societal goal of eliminating discrimination, the statute must be liberally construed to accomplish its purposes and provide individuals with disabilities the greatest protection. (See § 12993, subd. (a); see also *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 819 [111 Cal.Rptr.2d 87, 29 P.3d 175]; *Colmenares v. Braemar Country Club, Inc., supra,* 29 Cal.4th at p. 1026.)

In sum, we hold the trial court erred in directing a verdict for Lockheed on the cause of action for failure to provide reasonable accommodation on the ground FEHA imposes on an employer no duty to accommodate an applicant or employee who is not actually disabled.[20]

---

[19] The latter point is well illustrated by a case in which an employee was fired because her employer regarded her as disabled based on the belief that her bipolar disorder impeded her workplace interactions. (*Jacques, supra,* 200 F.Supp.2d at p. 170.) The court noted: "[A]n employee who is simply impaired and an employee who is impaired *and* 'regarded as' disabled are not similarly situated since [only] the 'regarded as' disabled employee is subject to the stigma of the disabling and discriminatory attitudes of others." (*Id.* at p. 170.) "Categorically denying reasonable accommodations to 'regarded as' plaintiffs would allow the prejudices and biases of others to impermissibly deny an impaired employee his or her job because of the mistaken perception that the employee suffers from an actual disability. This is the concern addressed by Congress [in the ADA], but ignored by *Weber.*" (*Id.* at p. 168; see also *Jewell v. Reid's Confectionary Co.* (D.C.Me. 2001) 172 F.Supp.2d 212, 218–219 [concluding it is hardly a "bizarre result" to hold accountable—indeed the ADA was intended, in part, to punish—an employer who wrongly regards an employee as disabled, but fails to explore that employee's need for accommodations, choosing instead to take adverse action based on assumptions not truly indicative of an employee's ability].)

[20] Lockheed maintains it did everything within its power to accommodate Gelfo's medical restrictions, but was unable to accommodate the restrictions against prolonged sitting and

b. *An employer must engage in an informal dialogue to determine effective reasonable accommodations with an applicant or employee regarded as disabled.*

 Under section 12940, subdivision (n), it is an unlawful employment practice "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical . . . disability. . . ." The statute provides an independent basis for liability. (*Claudio v. Regents of University of California, supra*, 134 Cal.App.4th at p. 243.) Nonetheless, an employer's duty to accommodate is inextricably linked to its obligation to engage in a timely, good faith discussion with an applicant or employee whom it knows[21] is disabled, and who has requested an accommodation, to determine the extent of the individual's limitations, before an individual may be deemed unable to work.

Lockheed argues an employer owes no duty to engage in a "futile" discussion with an applicant or employee who is merely "regarded as" disabled and to whom no duty of reasonable accommodation is or will be owed. This argument is rejected for the same reasons we rejected the argument an employer need not accommodate an employee who is "regarded as" disabled. Indeed, the argument for enforcing a duty to engage in a discussion may be more compelling in the context of the interactive process.

As the court stated in *Jensen*, in words equally apt here, " '[t]he interactive process is at the heart of the [FEHA's] process and essential to accomplishing its goals. It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an "undue burden" on employers.' " (*Jensen, supra*, 85 Cal.App.4th at pp. 261–262.) "In a practical sense," as another court observed in the ADA context, "the interactive process is more of a labor tool than a legal tool, and is a prophylactic means to guard against capable employees losing their jobs even if they are not actually disabled. It is clearly a mechanism to allow for early intervention by an employer, outside of the legal forum, for exploring

---

standing. Gelfo insists that, had Lockheed discussed the matter with him, it would have learned his restrictions—to the extent they required any accommodation at all—could easily have been accommodated by permitting him an additional break or two, or allowing him to occasionally sit on a stool. These are factual questions properly decided on remand in the first instance.

[21] FEHA's reference to a "known" disability is read to mean a disability of which the employer has become aware, whether because it is obvious, the employee has brought it to the employer's attention, it is based on the employer's own perception—mistaken or not—of the existence of a disabling condition or, perhaps as here, the employer has come upon information indicating the presence of a disability.

reasonable accommodations for employees who are perceived to be disabled. . . ." *(Jacques, supra,* 200 F.Supp.2d at p. 170.) Realistically, when an employer is aware of an employee's disability, the employer's interest is not in assessing whether the individual's impairment may legally be considered an "actual disability."[22] Rather, "[t]he focus of the interactive process centers on employee-employer relationships so that capable employees can remain employed if their medical problems can be accommodated, rather than sounding a clarion call to legal troops to opine on whether the employee's impairment is an actual disability within the legal nuances of the [statute]." *(Id.* at p. 169.)

In sum, when an employer needs to fill a position and an applicant or employee desires the position, the interactive process is designed to bring the two parties together to speak freely and to determine whether a reasonable, mutually satisfactory accommodation is possible to meet their respective needs. (See *Prilliman v. United Air Lines, Inc., supra,* 53 Cal.App.4th 935, 950 [62 Cal.Rptr.2d 142] [noting that a reasonable accommodation envisions a cooperative exchange of information " 'between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions' "].)

■ We conclude the trial court erred in directing a verdict for Lockheed on the cause of action for failure to engage timely and in good faith in the interactive process to determine effective reasonable accommodations. The determination of error is based on the court's mistaken determination FEHA does not impose on an employer a duty to engage in discussions with an applicant or employee who is *not actually disabled.*[23]

---

[22] Typically, an applicant or employee triggers the employer's obligation to participate in the interactive process by requesting an accommodation. (§ 12940, subd. (n).) Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation. Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith. (See *Jensen, supra,* 85 Cal.App.4th at p. 266; see also *Allen v. Pacific Bell* (9th Cir. 2003) 348 F.3d 1113, 1115 [ADA].)

[23] Lockheed asserts that, if it had a duty to engage in the interactive process, the duty was discharged. "If anything," it argues, "it was Gelfo who failed to engage in a good faith interactive process." Gelfo counters Lockheed made up its mind before July 2002 that it would not accommodate Gelfo's limitations, and nothing could cause it to reconsider that decision. Because the evidence is conflicting and the issue of the parties' efforts and good faith is factual, the claim is properly left for the jury's consideration.

*6. Gelfo failed to establish an entitlement to punitive damages.*

Section 3294 permits punitive damages against a corporate employer if the employee is sufficiently high in the corporation's decisionmaking hierarchy to be an "officer, director or managing agent." (Civ. Code, § 3294, subds. (a), (b); see *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944] (*White*); see also *Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167 [99 Cal.Rptr.2d 435] [" 'Managing agents' are employees who 'exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy.' [Citation.]" (italics omitted)].)

The trial court granted Lockheed's motion for directed verdict on the ground Gelfo failed to present sufficiently clear and convincing evidence to permit the jury to find a corporate decision maker was involved in rescinding his job offer.

The only Lockheed employee who potentially falls into such a category is Harbeson's supervisor, Bob MacPherson, whom Harbeson testified was a Lockheed vice-president. MacPherson did not testify at trial, and Gelfo did not introduce any evidence to establish his position in Lockheed's corporate hierarchy. No evidence was presented regarding MacPherson's duties or authority, let alone substantial evidence, that MacPherson "exercise[d] substantial discretionary authority over decisions that ultimately determine corporate policy." (*White, supra*, 21 Cal.4th at p. 573.)

Gelfo contends the issue of managing agent is a factual question for the jury, and the trial court invaded the jury's province by granting the motion for a directed verdict. Whether an employee is a managing agent must be made on a case-by-case basis. (*White, supra*, 21 Cal.4th at p. 567). However, where insufficient evidence supports a verdict in the plaintiff's favor, no factual issue remains for the jury to decide. Were this not the case, motions for directed verdict and nonsuit would not exist. Viewing the evidence in the light most favorable to Gelfo, we similarly conclude no substantial evidence showed MacPherson was a managing agent. "[O]n this record[,] the jury could not have made the finding that [MacPherson] was a managing agent, which finding is essential for the imposition of punitive damages against [Lockheed]." (*Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 421 [27 Cal.Rptr.2d 457], fn. omitted.)

## DISPOSITION

The judgment is reversed as to: (1) the cause of action for disability discrimination in violation of Government Code section 12940, subdivision (a), based on the allegation Lockheed refused to hire Gelfo because it regarded him as a physically disabled person; (2) the cause of action for failure to provide reasonable accommodation in violation of Government Code section 12940, subdivision (m); and (3) the cause of action for failure to engage in the interactive process in violation of Government Code section 12940, subdivision (n). The matter is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Each party is to bear his or its costs of appeal.

Cooper, P. J., and Rubin, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 23, 2006, S144984. Corrigan, J., did not participate therein.