[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1030 
OPINION
In this case an employee at a municipal water treatment plant was injured on the job. When she was recovering from her injury, she was notified she had been terminated because the city did not believe she could perform the essential functions of her job. She then brought an action under the California Fair Employment and Housing Act (FEHA), Government Code[1] *Page 1031 
section 12940 et seq., in which she alleged the city had failed to attempt to accommodate her disability and that she was capable of performing the essential functions of her job.
The trial court agreed with the employee, but found reinstatement was not appropriate because it would require that the city discharge another employee. The trial court awarded the employee backpay and emotional distress damages. However, the court declined to award the employee any compensation for future lost wages or so-called "front pay."
On appeal the city argues that because, following notice to her that it believed she could not perform her job, the employee never expressly requested an accommodation or otherwise indicated that she wanted to continue working, it had no duty to offer any accommodation. For her part, by way of a cross-appeal, the employee argues the trial court should have awarded her future lost wages.
We agree with the city's contention it did not have to offer the employee any accommodation. The record shows that almost one year after the employee was injured, the city's workers' compensation administrator advised her that its doctor did not believe she would be able to return to her job and offered her rehabilitation and retraining benefits. The employee accepted the benefits and did not directly contact her employer about her status. More than 18 months after the employee was injured, the city formally terminated her employment. This record shows the employee was given ample opportunity to express interest in retaining her job. For more than 18 months she failed to do so, but instead accepted retraining benefits for another career. Given these circumstances, where the employee failed to express any meaningful or definitive interest in retaining her job, FEHA did not require that her employer discuss with or offer her accommodations for her disability.
 FACTUAL BACKGROUND
In April 1998 Tanya Milan began work as a water treatment operator for the City of Holtville (the city). Milan began work as a grade II operator and her job required that she take water readings, collect samples, wash filters, and do anything else asked of her by her supervisors at the city's water treatment plant. By September 2002 Milan had been promoted to a grade III operator and supervised a grade II operator at the treatment plant.
On September 10, 2002, while Milan was moving a large L-shaped piece of metal known as an iron angle from one room to another, the iron angle hit a wall and severely injured Milan's neck. An MRI examination disclosed Milan's fourth and fifth cervical vertebrae had been herniated and required *Page 1032 
immediate surgery. The herniated discs were removed, her vertebrae were fused and a metal plate was inserted in her neck.
Milan applied for workers' compensation benefits, and on June 25, 2003, she was examined by a physician retained on behalf of the city, Dr. Eric Korsh. On that day Dr. Korsh sent the city a letter in which he stated his belief that Milan's job required "a significant amount of lifting, bending, and twisting." In light of his perception of her duties and his assessment of her physical condition, Dr. Korsh concluded Milan would not be able to return to work at the water treatment plant.
Milan was unaware of Dr. Korsh's conclusion about her ability to return to work. The city's public works manager was aware of Dr. Korsh's conclusion but decided to take no immediate action with respect to Milan's employment because he wanted to see if her condition improved.
Although the public works manager did not communicate with Milan about Dr. Korsh's evaluation, on August 4, 2003, the outside administrator of the city's self-insured workers' compensation program sent Milan a letter which stated, in part: "Dr. Korsh reports you will not be able to return to your usual job because of the effects of your work injury." The letter stated that in light of Dr. Korsh's assessment, the city was offering Milan rehabilitation benefits. The letter further states that Milan could dispute the city's determination that she could not return to her job by returning a form to a rehabilitation unit.
According to Milan, she in fact attempted to dispute the city's determination she was entitled to rehabilitation by contacting either the workers' compensation administrator or workers' compensation appeals board. However, Milan also conceded that notwithstanding her belief that she could return to her job, she accepted the rehabilitation benefits offered by the city and took an online real estate course. Nonetheless, Milan believed she was still employed by the city because she was in fact receiving a regular paycheck from the city, even though she had not returned to work. However, Milan also conceded that she did not contact anyone at the city about her condition or her plans to return to work.
On March 30, 2004, Milan received a letter from the city terminating her employment. The letter stated that based on Dr. Korsh's evaluation, the city had concluded that Milan could not return to her customary position and there was no job within the city which she could reasonably perform. The letter enclosed Milan's final paychecks and a check for earned, but unused, vacation time.
Milan was shocked by the city's letter because she had been feeling better and was very much looking forward to returning to work. According to *Page 1033 
Milan, no one from the city contacted her with respect to the city's decision to terminate her employment. In particular, no one from the city inquired of her as to whether her condition had improved in the months following her examination by Dr. Korsh. According to Milan's treating physician, Dr. Travis Calvin, as of May 17, 2004, Milan could return to a job which did not require a great deal of physical activity, such as teaching. Milan continued treating with Dr. Calvin throughout 2004. Dr. Calvin testified that every time he saw Milan through 2004 she expressed a desire to return to work.
On March 25, 2005, Dr. Calvin sent a letter to the city's outside workers' compensation administrator in which he concluded Milan could return to work at the water treatment plant with some modifications. Dr. Calvin had reviewed a written description of the duties required of a grade III operator and believed she could perform those duties so long as she was not required to lift more than 35 pounds, do overhead work, bend or stoop more than three hours a day, or use a ladder higher than 10 feet.
 PROCEDURAL HISTORY
On March 30, 2005, Milan filed a complaint against the city alleging it had violated FEHA. Milan argued the city violated FEHA by failing to determine whether it could provide effective accommodations for Milan's disability.
Trial on Milan's complaint commenced on April 30, 2008, without a jury. At the close of Milan's case, the city moved for judgment under Code of Civil Procedure section 631.8. The city argued Milan had never sought an accommodation of her disability, and that in any event no accommodation was possible because she could not perform the essential functions of her job. Milan opposed the motion, arguing that in light of Dr. Korsh's opinion, the city had an obligation under FEHA to contact Milan and determine whether it could accommodate her disability. The trial court denied the city's motion. The trial court found that when the city received Dr. Korsh's report, it had an obligation to engage with Milan in an interactive process to determine whether her disability could be accommodated and that the city had failed to do so. The trial court stated that, after hearing the rest of the case, it would determine whether Milan's limitation could be adequately accommodated.
Following presentation of the city's case, the trial court took the matter under submission. Thereafter, the trial court issued a tentative decision in Milan's favor. The court found the city failed to engage with Milan in a process to determine whether her disability could be accommodated and had failed to provide a reasonable accommodation for her disability. Because of its concern that ordering reinstatement would impose a hardship on other city employees, the trial court declined to order that Milan be reinstated. It did *Page 1034 
however award Milan backpay in the amount of $124,050.96, $24,200 in emotional distress damages, and $11,500 in other out-of-pocket losses. In addition, it credited the city with a setoff of $17,340 in temporary disability payments Milan received. Although Milan requested it as an alternative to reinstatement, the trial court made no award for loss of future wages or "front pay." The court also awarded Milan $86,871.73 in attorney fees and costs.
The city filed a timely notice of appeal and Milan filed a timely cross-appeal.
 DISCUSSION I
A. Standards of Review
On appeal we review the city's contentions with respect to the sufficiency of the evidence under the usual deferential standard and we review questions of law de novo. "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidencebe found, it is of no consequence that the trial courtbelieving other evidence, or drawing other reasonableinferences, might have reached a contrary conclusion.
[Citations.]" (Bowers v. Bernards (1984)150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].)
B. Request for Accommodation
In its principal argument on appeal, the city contends the trial court erred in finding the city failed to communicate with Milan with respect to whether her disability could be accommodated. The city contends that notwithstanding the fact Milan was given notice the city did not believe she could return to her job, there is no evidence in the record Milan ever requested any accommodation or even expressed to the city any desire to return to her former job. We agree with the city.
1. Interactive Process
This case turns on whether the city met its obligations under section 12940, subdivision (n). Section 12940, subdivision (n), requires that an *Page 1035 
employer "engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a requestfor reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (Italics added.) An employer's failure to engage in the interactive process required by section 12940, subdivision (n), gives rise to liability under FEHA. (Claudio v.Regents of University of California (2005)134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837].)
"`"[T]he interactive process is at the heart of the [FEHA's] process and essential to accomplishing its goals. It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an `undue burden' on employers."' [Citation.] `In a practical sense,' as another court observed in the ADA context, `the interactive process is more of a labor tool than a legal tool, and is a prophylactic means to guard against capable employees losing their jobs even if they are not actually disabled. It is clearly a mechanism to allow for early intervention by an employer, outside of the legal forum, for exploring reasonable accommodations for employees who are perceived to be disabled. . . .' [Citation.] Realistically, when an employer is aware of an employee's disability, the employer's interest is not in assessing whether the individual's impairment may legally be considered an `actual disability.' Rather, `[t]he focus of the interactive process centers on employee-employer relationships so that capable employees can remain employed if their medical problems can be accommodated. . . .' [Citation.]" (Gelfo v. Lockheed MartinCorp. (2006) 140 Cal.App.4th 34, 61-62
[43 Cal.Rptr.3d 874], fn. omitted.)
Importantly, by its terms section 12940, subdivision (n) requires that the employee initiate the process. (Gelfo v.Lockheed Martin Corp., supra, 140 Cal.App.4th at p. 62, fn. 22.) On the other hand, "no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation. Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." (Id. at p. 62, fn. 22.) As one court stated in interpreting the analogous federal requirement to engage in an interactive accommodation process: "[P]roperly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say `I want a reasonable accommodation,'. . . . The employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help. `[T]he employer must make a reasonable effort to determine the *Page 1036 
appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.'" (Bultemeyer v. Fort WayneCommunity Schools (1996) 100 F.3d 1281, 1285-1286; see also Burnett v. U.S. Air, Inc. (2000) 228 F.3d 1105,1112, overruled on other grounds US Airways, Inc. v.Burnett (2002) 535 U.S. 391 [152 L.Ed.2d 589,122 S.Ct. 1516].)
2. Milan communication
Here, even if we generously interpret an employee's obligation under section 12940, subdivision (n), the record will not sustain a finding Milan met her obligations under the statute.
First, we note the city had serious questions about Milan's ability to perform her job and made her aware of those concerns when, in August 2003, the city's workers' compensation administrator relayed Dr. Korsh's appraisal of her condition to her. Secondly, by March 2004, when her employment was terminated, Milan was aware she had not been at work for more than 18 months. While Dr. Korsh's appraisal and Milan's lengthy absence did not create any duty to specifically request an accommodation of her disability (see Bultemeyer v. FortWayne Community Schools, supra,100 F.3d at pp. 1285-1286), those circumstances did require that, at the very least, she communicate to the city that she planned to continue working at the water treatment plant. Section 12940, subdivision (n), does not permit an employee to ignore notice his or her employer believes he or she is not fit to work, be absent from work for more than 18 months, and make no attempt to communicate with the employer about his or her desire to continue working. Milan's apparent response to the workers' compensation administrator or workers' compensation appeals board was not adequate because in the end Milan accepted rehabilitation and retraining benefits offered by the administrator. In this context, good faith required that Milan directly express to the city her interest in retaining her job. Only then would an obligation to engage with her with respect to possible accommodations arise.
In short, where, as here, an employer has not received any communication from an employee over a lengthy period of time, and after the employee has been given notice of the employer's determination the employee is not fit, an employer is not required by section 12940, subdivision (n), to initiate any discussion of accommodations. Imposition of such a duty under those circumstances would contradict the express terms of the statute which requires that the employee initiate the interactive process. Thus, the record will not support the trial court's finding of liability under FEHA. *Page 1037 
Rather, the trial court should have granted the city's motion under Code of Civil Procedure section 631.8.[2]
 DISPOSITION
The judgment is reversed and remanded with instructions that judgment be entered in favor of the city. The city to recover its costs of appeal.
McConnell, P. J., and Huffman, J., concurred.
[1] All further statutory references are to the Government Code unless otherwise specified.
[2] In light of our determination judgment should be entered in favor of the city, we do not reach Milan's contention on her cross-appeal that she should have been awarded compensation for future lost wages or "front pay." *Page 1038