Filed 4/28/23; Certified for Publication 5/19/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DEANNA HODGES, | B297864 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC691836 |
| v. | |
| CEDARS-SINAI MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Kousha Berokim for Plaintiff and Appellant.

Venable, Daniel P. Hoffer, Ryan M. Andrews and Rudolph G. Klapper for Defendant and Respondent.

_____

Plaintiff Deanna Hodges is a former employee of defendant Cedars-Sinai Medical Center (Cedars). As a condition of her continued employment, she was required to get a flu vaccine unless she obtained a valid exemption—one establishing a medically recognized contraindication to getting the flu vaccine. Her doctor wrote a note recommending an exemption for various reasons, including her history of cancer and general allergies. None of the reasons was a medically recognized contraindication to getting the flu vaccine. Cedars denied the exemption request. Plaintiff still refused to get the vaccine. Cedars terminated her. Plaintiff sued Cedars for disability discrimination and related claims under the Fair Employment and Housing Act, Government Code[1] section 12900 et seq. (FEHA). The trial court granted Cedars's motion for summary judgment. We affirm.

**BACKGROUND**

Cedars operates a nonprofit academic medical center in Los Angeles. Its total workforce exceeds 15,000 employees, including approximately 2,100 doctors and 2,800 nurses. Together, these employees provide medical care to thousands of patients per day and perform related administrative and operational functions.

Plaintiff began working for Cedars in 2000. Throughout her tenure, she worked in an administrative role with no patient care responsibilities. Her office was in an administration building Cedars owned about a mile from the main Cedars medical campus, though she occasionally visited the main medical campus in her capacity as an employee. A shuttle bus ran continuously between the main medical campus and the administration building, and many Cedars employees traveled between the two sites on a daily basis.

---

[1] Undesignated statutory references are to the Government Code.

In 2007, plaintiff was diagnosed with stage III colorectal cancer. She stopped working for a year and a half to undergo treatment, which included chemotherapy. The treatment was effective to rid her of cancer but left her with lingering side effects. These included unspecified allergies, a weakened immune system, and neuropathy—damage to the nerves resulting in an ongoing "tingling sensation" in her fingers and toes. None of these side effects limited her ability to perform her job functions, and she successfully returned to work for Cedars in 2009.

As an administrative employee without direct patient contact, plaintiff was under no obligation to get a flu vaccine when she was hired or when she returned from cancer treatment in 2009. This changed in 2017. That September, Cedars announced a new policy requiring all employees, regardless of their role, to be vaccinated by the beginning of flu season. This was the latest expansion to Cedars's longstanding efforts to limit employee transmission of flu, which had become more urgent in recent years following multiple patient deaths relating to flu.

The expanded 2017 policy aligned with the recommendation of the United States Department of Health and Human Services Centers for Disease Control and Prevention (CDC) "that all U.S. health care workers get vaccinated annually against influenza." For these purposes, the CDC defined "health care workers" to include "persons (e.g., clerical, dietary, housekeeping, laundry, security, maintenance, administrative, billing, and volunteers) not directly involved in patient care but potentially exposed to infectious agents that can be transmitted to and from health care workers and patients."

Cedars's 2017 flu vaccination policy made exceptions only for employees establishing "a valid medical or religious exemption." Employees who declined the vaccine "based on

3

medical contraindication, per CDC guidelines" were required to submit an exemption request form completed by their physician for review by Cedars's internal "Exemption Review Panel." The primary role of this panel was to determine whether an employee had a recognized contraindication to getting the flu vaccine. If an employee did not have a recognized contraindication but a closely related condition, like a moderate allergy to the flu vaccine, the panel would determine whether it was possible to help the employee get vaccinated in a way that accommodated the employee's concerns.

An unvaccinated employee whose exemption the panel approved would be required to mask in all patient care areas. An unvaccinated employee whose exemption the panel denied would be subject to termination. The vaccination requirement, and attendant enforcement mechanisms, were set to go into effect on November 1, 2017.

Plaintiff did not want to get the flu vaccine. When the requirement was announced, she had no diagnosis of any contraindication to getting the flu vaccine. She made an appointment with Dr. Henderson, her longtime physician, for advice. Dr. Henderson is a gastroenterologist and internist who practices at Cedars. He has no expertise in advising on whether a person should or should not receive a flu vaccine for medical reasons. Also, contrary to plaintiff's repeated claims in her reply brief, he is not an oncologist.

Plaintiff told Dr. Henderson she feared side effects from the flu vaccine would be like those she experienced with chemotherapy. She was particularly afraid of needles. She also told Dr. Henderson her parents had experienced severe flu-like symptoms after receiving the flu vaccine (about 20 years prior). Based on his knowledge of her health history, her physical and emotional condition, her role at Cedars, and his views on the

4

efficacy of the flu vaccine and suitability of alternative prevention methods, Dr. Henderson advised plaintiff not to get vaccinated. He agreed to help her apply for an exemption.

As required by the flu vaccine policy, Dr. Henderson completed Cedars's preprinted exemption form. The form explains Cedars "permits **medical exemption from influenza vaccination ONLY for recognized medical contraindications**." The form identifies as recognized contraindications only (1) history of life threatening allergic reaction to the flu vaccine or any of its components; and (2) history of Guillain-Barré Syndrome within six weeks following a previous dose of any flu vaccine. (For the 2017-2018 flu vaccine, the CDC recognized only one contraindication: history of severe allergic reaction to any component of the vaccine or after a previous dose of any flu vaccine. It recognized a history of Guillain-Barré Syndrome within six weeks following a previous dose of any flu vaccine as merely a "precaution.")

The form includes space for doctors to state "[o]ther" reasons their patient should not receive the flu vaccine. It cautions that such "[o]ther" reasons will be reviewed on a case-by-case basis. Doctors resorting to the "[o]ther" category are advised to "provide all supporting documentation."

In completing plaintiff's form, Dr. Henderson only checked the box next to "[o]ther" and did not check either of the identified "[r]ecognized contraindication[s]." To explain his "[o]ther" reason, he wrote: "H[istory] of multiple allergies post treatment for [colorectal cancer] [with] chemoradiation. Extreme [unwell] state results from injections [and] immunizations. No direct patient contact." He signed the form October 16, 2017. He attached no supporting documentation.

In his deposition, Dr. Henderson acknowledged that, when he completed the form, he was unaware of plaintiff having any

medically recognized contraindication to the flu vaccine—his reasons for the exemption request had "nothing to do with allergic reactions to the components of [the vaccine]," and he was aware of no Guillain-Barré Syndrome history for plaintiff. Dr. Henderson agreed that, in completing the form, he was "not communicating that [plaintiff] had a recognized contraindication to the flu vaccine . . . ."

Plaintiff submitted the signed exemption form to Cedars on October 31, 2017, the deadline for doing so and the day before the vaccination requirement was to take effect. Plaintiff had to make an appointment to submit the form, and it was the earliest appointment she could get when she first tried to schedule it on or after October 25.

The same day she submitted her form, a Cedars employee called plaintiff and told her the form was illegible, her request was denied, and she would be suspended and terminated if she did not agree to get the flu vaccine. Cedars placed plaintiff on unpaid administrative leave the next day for failure to comply with the vaccination policy.

In the ensuing days, plaintiff attempted to persuade Cedars her exemption request was valid. On November 1, 2017, she spoke with a different Cedars employee, Amanda Sibley, who confirmed her request had been denied. Ms. Sibley is a nurse practitioner who was responsible for implementing Cedars's flu vaccine policy. Plaintiff told Ms. Sibley that plaintiff is a cancer survivor, suffers from various medical issues and multiple allergies, and was instructed by her doctor not to take the flu vaccine. Ms. Sibley asked plaintiff if she was allergic to egg, historically a common flu vaccine component. Plaintiff declined to specify any particular allergies in response. Instead, she asked Ms. Sibley to contact Dr. Henderson for further explanation.

Plaintiff also called Dr. Henderson to ask him to contact Ms. Sibley. In response, Dr. Henderson called Cedars, also on November 1, and spoke with Ms. Sibley. Over the course of a two-minute conversation, Dr. Henderson "did [his] best to communicate" the basis for plaintiff's exemption request, namely "cancer history, neurological disorder, neuropathy, and the flu vaccine's extreme risk of triggering reactions, allergies, and/or symptoms to [plaintiff]."

In the afternoon of November 1, Ms. Sibley related the content of plaintiff's exemption request to the members of the flu vaccine exemption review panel by e-mail (subject to the qualification that "2 words," which Dr. Henderson had not been able to recall when she spoke to him and later determined to be just the word "immunizations," were illegible). Approximately 45 minutes later, one of the members, Dr. Jonathan Grein, responded: "A history of multiple allergies would not be an appropriate reason to receive an exemption. I would deny this request." Dr. Grein explained in his declaration that he did not consider any of the reasons stated on plaintiff's exemption form as valid bases for exemption from the flu vaccine, and that her cancer history is actually a reason *to* get vaccinated. The afternoon after Dr. Grein e-mailed his denial recommendation to the panel, another member responded to the group: "I agree." No members dissented from Dr. Grein's proposed approach.

On November 2, 2017, Ms. Sibley e-mailed a letter to plaintiff informing her that the panel had denied her exemption request because it did not meet the CDC criteria for medical exemption. It offered her the opportunity to "change [her] mind about receiving the flu vaccine" and reiterated that failure to comply with the vaccination requirement would subject her to termination.

On November 7, 2017, a Cedars human resources representative, Angela Harvey, called plaintiff to encourage her to reconsider getting the flu vaccine. Plaintiff offered to wear a face mask, work from home, and avoid going anywhere near the main medical campus. But she remained steadfast that she would not be vaccinated without assurance from her doctor that it was safe to do so.

Around the same time, before she was terminated, another person encouraged plaintiff to reconsider her choice not to get vaccinated: Dr. Henderson. According to his deposition testimony, he thought a good "compromise" to the "pickle" of plaintiff facing termination was for her "to receive the vaccine and go forward, and that was [his] general understanding of what [he] thought would be a good solution for her, but she was severely adverse to the idea of getting the vaccination even in suffering the consequences." Plaintiff's reasons, according to Dr. Henderson, "all boiled down to the fact that she did not want to get [vaccinated]."

Plaintiff was terminated effective November 9, 2017. Plaintiff was the only Cedars employee terminated that flu vaccine cycle for failure to comply with the vaccination policy. Of the 24 employees who sought medical exemptions, 10 were granted and 14, including plaintiff's, were denied. All other employees whose requests were denied agreed to receive the vaccine.

After obtaining a right to sue letter from the California Department of Fair Housing and Employment, plaintiff sued Cedars in January 2018. Her complaint contained six causes of action, each alleged as a violation of FEHA or the public policy it manifests: (1) disability discrimination; (2) failure to engage in the interactive process; (3) failure to accommodate a disability; (4) retaliation; (5) failure to take reasonable steps to prevent

8

discrimination, harassment and retaliation; and (6) wrongful termination.

Cedars moved for summary judgment on all causes of action in December 2018. Plaintiff filed an opposition in February 2019 and objected to certain of Cedars's evidentiary submissions. Cedars filed a reply and objected to certain of plaintiff's evidentiary submissions. The trial court held a hearing and granted Cedars's motion in March 2019. At the same time, it ruled on Cedars's evidentiary objections (overruled in part and sustained in part) and decided the parties' respective requests for judicial notice (Cedars's granted in toto; plaintiff's granted in limited part). We are directed to no resolution in the record of plaintiff's evidentiary objections.

Certain new evidence filed in support of plaintiff's opposition bears particular note because it plays prominently in plaintiff's appellate briefing. Plaintiff submitted a declaration from Dr. Henderson in which he identified the factors he considered in signing plaintiff's vaccine exemption form. The factors were: "a. [plaintiff's] preexisting neurological condition [¶] b. [plaintiff's] parents' severe adverse reaction to the flu vaccine [¶] c. [plaintiff's] neuropathy in her hands, legs, and feet [¶] d. [plaintiff's] cancer history [and consequent surgeries] [¶] e. [plaintiff's] emotional state [¶] f. [plaintiff] was not a health care personnel [¶] g. [plaintiff's] very limited contact with health care personnel, which could have been even further limited [¶] h. [a]vailability of other flu prevention methods to [plaintiff], such as masking and social distancing [and] [¶] i. the low efficacy of the flu vaccine."

Dr. Henderson then concluded that "[t]hese factors, both on their own, and specially combined together, presented extreme risk of triggering reactions, allergies, and/or symptoms to [plaintiff]." Cedars objected to this testimony, including for the

9

reason that Dr. Henderson was not an expert qualified to offer it. Indeed, Dr. Henderson testified in deposition "I don't have any expertise to tell her whether she should receive [the flu vaccine] or not receive it," and "I don't have an expert knowledge of that." The trial court nonetheless overruled Cedars's objection and admitted this testimony. Cedars does not challenge that ruling on appeal.

Plaintiff also submitted evidence from both Dr. Henderson and a retained expert, Dr. Dorratoltaj (who is not a medical doctor), to the effect that Cedars's recognized contraindications to the flu vaccine "are not exhaustive." The trial court sustained Cedars's objections to this evidence. Similarly, plaintiff submitted evidence to the effect that "[an] individual's physician should determine if the individual should take the flu vaccine." Again, the trial court sustained Cedars's objections to this evidence. Plaintiff challenges neither ruling on appeal.

After the trial court granted Cedars's motion for summary judgment, plaintiff moved for reconsideration. The trial court denied plaintiff's motion. Plaintiff timely appealed the judgment.

## DISCUSSION

### 1. Summary Judgment and Standard of Review

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).) The moving defendant bears the burden of persuasion that no triable issues exist and that it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

10

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) It is no longer called a "disfavored" remedy. (*Ibid.*) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid.*)

On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037, citation omitted (*Yanowitz*).)

"Furthermore, our review is governed by a fundamental principle of appellate procedure, namely, that ' "[a] judgment or order of the lower court is presumed correct," ' and thus, ' "error must be affirmatively shown." ' [Citation.] Under this principle, [the nonmoving] plaintiff bears the burden of establishing error on appeal, even though [the moving] defendant[] had the burden of proving [its] right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief." (*Murchison v. County of Tehama* (2021) 69 Cal.App.5th 867, 882 (*Murchison*).)

2. **Analysis**

   a. **Disability discrimination.**

      i. *McDonnell Douglas* **burden-shifting framework.**

For purposes of evaluating FEHA discrimination claims, California courts have adopted the burden-shifting framework enunciated by the United States Supreme Court in *McDonnell*

11

*Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 31 (*Zamora*).) The framework was originally developed for use at trial. (*Id.* at p. 32.) When applied at summary judgment, it works as follows: "The 'employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' [Citation.] If the employer satisfies its initial burden, it ' " 'will be entitled to summary [adjudication] unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing. In short, by applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary [adjudication], "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." ' " ' " (*Ibid.,* italics omitted.) Whether summary adjudication is appropriate "will depend on a number of factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. [Citation.] However, many employment cases present issues of intent and motive [which] 'are rarely appropriate for disposition on summary judgment, however liberalized [summary judgment standards may] be.' " (*Id.* at pp. 32–33, italics omitted.)

As plaintiff observes, the court in *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109 (*Wallace*) held the *McDonnell Douglas* burden-shifting framework inapplicable to disability discrimination cases in which the plaintiff introduces direct evidence that the employer's challenged conduct was motivated by prohibited reasons. (*Wallace,* at p. 123.) We must

12

therefore address as a threshold question whether plaintiff produced any such direct evidence.

"Direct evidence is evidence that proves a fact without inference or presumption." (*Zamora*, *supra*, 71 Cal.App.5th at p. 35.) Here, the only evidence plaintiff points to as precluding application of the *McDonnell Douglas* framework is that "after [plaintiff] followed Dr. Henderson's orders and did not receive the flu shot, Cedars terminated [her] because she did not get the [flu] vaccination."

This is not direct evidence of a prohibited motive. Terminating a person because she refused to get a flu shot in violation of employer policy is not prohibited by FEHA. (See generally § 12940.) Plaintiff says she was terminated because she was "[un]ab[le] to get the vaccine." But this was *her* claimed motive in refusing to get the flu vaccine, not Cedars's stated reason for terminating her. There are no statements by Cedars or documentary evidence that Cedars terminated plaintiff because she was "unable" to get the vaccine, or due to any claimed disability. To the contrary, the direct evidence, including the written policy and exemption request form, shows Cedars had a policy of terminating employees who failed to receive the flu vaccine without a religious exemption or medically recognized contraindication to receive the flu vaccine. Cedars terminated plaintiff when she refused the flu vaccine because she failed to provide evidence of a medically recognized contraindication. In fact, the direct evidence is that Cedars viewed plaintiff as *not* disabled in any way and fully capable of receiving the flu vaccine, notwithstanding her diagnoses offered by Dr. Henderson in support of her claimed exemption.

Thus, the *McDonnell Douglas* burden shifting framework, as adapted for the summary adjudication context, applies here.

13

### ii. Relevant FEHA anti-discrimination provisions.

FEHA declares it unlawful for "an employer, because of . . . physical disability, mental disability [or] medical condition . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).)

FEHA defines "mental disability" and "physical disability" separately. Both forms of disability require that a plaintiff has or is perceived by an employer as having a condition that "limits a major life activity." (§ 12926, subds. (j), (m).) "Limits" means making achievement of a major life activity difficult. (*Id*., subds. (j)(1)(B) & (m)(1)(B)(ii).) Major life activities include "physical, mental, and social activities and working." (*Id*., subds. (j)(1)(C) & (m)(1)(B)(iii).)

FEHA defines "medical condition" to include "[a]ny health impairment related to or associated with a diagnosis of cancer or a record or history of cancer." (§ 12926, subd. (i)(1).) A "medical condition" need not limit a major life activity. However, "medical condition" is not defined to include an employer's *perception* of a condition the way that "physical disability" and "mental disability" are. (See § 12926, subd. (j)(4), (5) ["mental disability" includes being regarded as having a mental disability]; *id.,* subd. (m)(4), (5) ["physical disability" includes being regarded as having a physical disability]; see also § 12926.1, subd. (b) ["The law of this state contains broad definitions of physical disability, mental disability, *and medical condition*. It is the intent of the Legislature that the definitions of *physical disability and mental disability* be construed so that applicants and employees are protected from discrimination due to an actual or perceived physical or mental impairment *that is disabling, potentially*

14

*disabling, or perceived as disabling or potentially disabling.*"
(italics added)].)

###   iii.     Medical condition or physical disability discrimination?

Cedars raises a threshold dispute over whether plaintiff raised a material triable issue as to *medical condition* discrimination. Cedars contends she did not, because she alleged and argued in the trial court only *physical disability* discrimination.

Physical disability discrimination and medical condition discrimination are separate causes of action in California. (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585–586 (*Soria*).) Plaintiff argues in her opening brief that her cancer history and neuropathy amount to both a physical disability and a medical condition. Cedars argues in its responding brief that plaintiff cannot defeat summary judgment by arguing she was subject to medical condition discrimination because her complaint did not allege or put Cedars on notice of such a claim. Plaintiff does not respond to this argument in her reply.

We need not resolve whether plaintiff's complaint alleged medical condition discrimination because plaintiff does not substantively develop such a claim in her appellate briefing. Instead, she identifies the elements of her prima facie discrimination claim as being those of a claim for physical disability discrimination. Citing *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344–345 (*Arteaga*), a physical disability case, plaintiff recites the elements of her prima facie claim as follows: "that she[] (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations[;] and (3) was subjected to an adverse employment action because

15

of the disability or perceived disability."  Quoting *Wallace*, *supra*, 245 Cal.App.4th 109, another physical disability discrimination case (see *id.* at pp. 124–125), plaintiff goes on to explain that a plaintiff satisfies the third element—the employer's intent to discriminate—"by proving (1) the employer knew that plaintiff had a *physical condition that limited a major life activity*, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived *physical condition* was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action" (*id.* at p. 129, italics added).

Based on plaintiff's framing of the cause of action, we consider only whether there is a triable issue of fact regarding physical disability discrimination.  We find, however, that even if plaintiff had articulated her cause of action as one for medical condition discrimination, her claim would fail for the same reason her claim of physical disability discrimination would as explained in part 2.a.v., *post*.

### iv.  There is no triable issue of fact as to physical disability discrimination.

Plaintiff argues her cancer history and neuropathy amount to a physical disability because they "make it impossible for her to work as she cannot work as she cannot get vaccinated.  Her disabilities limited her ability to safely receive the vaccine."  To be clear, plaintiff admits her cancer history and neuropathy in no way otherwise limited her ability to work in 2017.

By this argument, plaintiff asserts she has a physical disability within the meaning of section 12926, subdivision (m)(1), which provides that a physiological condition that affects one or more enumerated body systems and "limits a major life activity" is a "physical disability" for purposes of

16

FEHA.  (§ 12926, subd. (m)(1)(B)(i).)  Working is expressly defined as a "[m]ajor life activit[y]."  (*Id.,* subd. (m)(1)(B)(iii).)

In moving for summary judgment, Cedars introduced evidence that plaintiff was not disabled and could not prove she was disabled.  It offered official guidance from the CDC and testimony from Dr. Grein that there were only two medically recognized contraindications for getting the flu vaccine.  It offered testimony from plaintiff and Dr. Henderson that she had never been diagnosed with either contraindication.  Dr. Henderson further acknowledged that none of the conditions he listed on her exemption form were recognized contraindications for getting the flu vaccine.  If this were not enough, Cedars also offered evidence that, before she was terminated, Dr. Henderson advised plaintiff to reconsider her decision not to get the vaccine and that, under CDC guidelines, plaintiff's cancer history was not a contraindication but rather an *indication*—a condition making it advisable—that a person get vaccinated.

The only evidence plaintiff now points to as establishing her disability is Dr. Henderson's statement in paragraph 10 of his declaration that "[t]hese factors, both on their own, and specially combined together, presented extreme risk of triggering reactions, allergies, and/or symptoms to [plaintiff]."  The referenced "factors" are recited above and include plaintiff's cancer history and neuropathy, along with other factors unrelated to plaintiff's physical condition.

Cedars does not directly address this testimony in its briefing.  Instead, it dismisses Dr. Henderson's testimony wholesale as nonexpert opinion inadequate to establish facts beyond the competence of a lay witness, i.e., whether plaintiff's conditions amount to contraindications to getting the flu vaccine.  Cedars offers a compelling basis for this position—Dr. Henderson's own testimony that he "do[es]n't have any

17

expertise to tell her whether she should receive [the flu vaccine] or not receive it"—but it omits a critical fact: Cedars made this objection to the trial court, and it was overruled. Cedars could have challenged this determination under Code of Civil Procedure section 906, but it did not. Accordingly, its characterization of Dr. Henderson's testimony as "lay opinion" after the trial court overruled its objection on expert competency grounds is forfeited.

Nonetheless, Cedars is correct that Dr. Henderson's declaration fails to raise a material fact as to plaintiff's claimed disability. Specifically, the declaration fails to show the risks of getting the vaccine, if manifested, would rise to the level of a disability. Dr. Henderson fails to specify what the possible "triggering reactions, allergies, and/or symptoms" might be and fails to suggest how they would limit her ability to work, either in general or in receiving the flu vaccine as a condition of her job. As explained in *Arteaga, supra*, 163 Cal.App.4th 327, there must be evidence that the symptoms are sufficiently severe to make a major life activity, such as working, difficult. (*Id.* at pp. 347–349.) This must also be true of symptoms that are merely *possible*.

Although plaintiff does not call our attention to it, we note that Dr. Henderson also states in his declaration "I was concerned [plaintiff's] preexisting neurological deficit [*sic*] and considered that any further unnecessary procedure, severe reaction, or allergy, caused by the flu vaccine, could cause further neuropathy." But again, Dr. Henderson does not express a view of any risk of a "severe" reaction and does not describe how such a reaction would manifest. He does not articulate what "further neuropathy" resulting from any reaction would entail—whether it would prolong her existing condition or make it worse, and to what extent. And, most critically, he does not articulate how

neuropathy amounts to a disability. Indeed, there is no evidence plaintiff's existing neuropathy amounts to a disability. By her own admission, it did not limit her ability to work except in her claimed connection to getting the flu vaccine.

Plaintiff offered no evidence that the potential symptoms Dr. Henderson described would amount to disabilities. For example, one factor he considered in concluding plaintiff was at risk for symptoms is her family history of reactions to flu vaccines. These reactions were flu-like symptoms. Even though they can be temporarily debilitating and cause a person to miss work, flu symptoms are not a disability. (Cal. Code Regs., tit. 2, § 11065, subd. (d)(9)(B).) Similarly, allergies can range in severity. Indeed, Dr. Henderson testified that some allergies to medications can be so minor that they do not warrant noting in a patient's chart. Minor reactions to a vaccine cannot amount to a disability. (See *ibid.* [excluding from definition of "disability" those "conditions hav[ing] little or no residual effects"].)

The inference that Dr. Henderson's declaration described a risk of only mild, nonlimiting symptoms is corroborated by another fact: he encouraged plaintiff to reconsider her resistance to getting the vaccine before she was terminated. He thought backing off her stance and complying with the policy would be a "good solution for her." This perspective, from her personal physician charged with her care, is impossible to reconcile with any meaningful risk of a disabling condition resulting to plaintiff from getting the flu vaccine. It is also irreconcilable with plaintiff's claim in briefing that she had a disability because she "cannot get vaccinated." Clearly, plaintiff *could* get vaccinated. At best, she chose not to due to risks of unspecified symptoms. Without evidence that these symptoms would be sufficiently burdensome or lasting to amount to a disability, there is no question of disability for a jury to consider.

We note plaintiff's repeated claims that contraindications to getting the flu vaccine are not limited to those recognized by the CDC, and that an individual's physician should determine if an individual should take the flu vaccine. Plaintiff's record citations for these assertions are to her statement of undisputed facts. But tracing the evidentiary support for those facts to their origins—testimony from Dr. Henderson, Dr. Dorratoltaj, and an article Dr. Dorratoltaj cited—and a review of the trial court's evidentiary rulings reveals the trial court deemed these facts inadmissible. Plaintiff does not challenge these rulings on appeal. She therefore has no evidence that conditions other than those Cedars identified are medically recognized contraindications to getting the flu vaccine. (See *Yanowitz*, *supra*, 36 Cal.4th at p. 1037 [summary judgment review does not consider facts to which objections were made and sustained].)

Plaintiff also asserts in her briefing that, alternatively, Cedars perceived her as having a disability. The only evidence she cites for this claim is Dr. Henderson's paragraph 10 testimony that she relies on for her claim of actual disability. Dr. Henderson's view that plaintiff faced special risks in getting vaccinated does not conflict with Cedars's evidence that it viewed her as able to safely receive the flu vaccine for want of any medically recognized contraindication.

Judgment was proper on plaintiff's disability discrimination cause of action because she failed to produce evidence sufficient to create a fact issue concerning an essential element of her prima facie case, i.e., her claimed disability or the perception by Cedars of disability. We therefore need not address the other elements of plaintiff's prima facie case.

### v. Legitimate nondiscriminatory reason; no claim of pretext.

Even if plaintiff had made a prima facie case for discrimination of any kind (e.g., physical disability, medical condition, or otherwise), summary adjudication of her disability discrimination cause of action would still have been proper because Cedars presented a legitimate, nondiscriminatory reason for her termination, and plaintiff fails to argue the reason was pretextual.

Summary judgment on a FEHA discrimination claim is appropriate where, regardless of any dispute concerning the plaintiff's prima facie case, the employer presents evidence of a legitimate, nondiscriminatory motive for its action, and the plaintiff fails to provide evidence rebutting the stated reason as pretextual. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).) Reasons are "legitimate" if they are "facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." (*Id.* at p. 358, italics omitted.) Issues that are " 'nondiscriminatory on their face' and 'honestly believed' by [the] employer, will suffice even if 'foolish or trivial or baseless' "; "the ultimate issue is whether [the] employer 'honestly believed in the reasons it offers.' " (*Ibid.*)

Here, the evidence shows, and plaintiff concedes, that "Cedars terminated [plaintiff] because she did not get the [flu] vaccination." Cedars presented evidence that its mandatory vaccination policy was a product of concern about patient safety and guidance from the CDC. In recent years, three patients had died under circumstances where flu was at least a contributing factor. CDC guidance in 2016 recommended that all employees at healthcare facilities, regardless of role or involvement in patient care, receive the flu vaccine.

21

Cedars's policy for medical exemptions from the flu vaccine further relied on CDC guidance. It permitted exemptions only for reasons the CDC identified as a contraindication and a precaution for getting the flu vaccine. It did not permit exemptions for conditions that were not medically recognized contraindications. The record shows Cedars strictly applied its policy to its workforce of 15,000 people. In 2017, 24 employees sought medical exemptions and Cedars granted only 10. Of the 14 it denied for want of a recognized medical contraindication, only plaintiff persisted in her refusal to get the vaccine; thus, only plaintiff was terminated as a result. In short, Cedars terminated plaintiff not because she was or was regarded as disabled, but because Cedars regarded her as *not* disabled. It considered her capable of safely receiving the flu vaccine and viewed her doctor's stated reasons she should not—reasons that he himself acknowledged were not medically recognized—as invalid.

Plaintiff nonetheless argues that Cedars's reason for terminating her was "discriminatory on its face." This is true, she argues, because *her* reason for not getting the vaccine was that her doctor told her not to. Plaintiff presents no authority for her contention that Cedars was bound to accept Dr. Henderson's opinion that, despite presenting no medically recognized contraindication to the flu vaccine, plaintiff should have been exempted from the vaccine requirement.

An employer is not bound to accept an employee's subjective belief that she is disabled. (*Arteaga*, *supra*, 163 Cal.App.4th at p. 347.) Instead, the employer is entitled to rely on other medical information. (*Ibid.*) Here, Cedars relied on CDC guidance, applied by its own physicians, to conclude there was no objective evidence of disability. Contrary to plaintiff's contention, this did not amount to Cedars "playing doctor" and

using its status as a healthcare enterprise to evade FEHA. Cedars adopted a policy recommended by the federal agency responsible for limiting the spread of disease in the United States and used that agency's unambiguous guidance in formulating exceptions.[2] Any employer adopting a similar policy would be capable of ascertaining whether an exemption applicant checked a box corresponding to a medically recognized contraindication.

Though plaintiff's request was communicated through a physician, it was nonetheless subjective. The information Dr. Henderson provided Cedars evinced no medically recognized reason not to get the flu vaccine; it merely listed reasons that he, personally, felt plaintiff should not have to get the vaccine. Indeed, his conclusion facially rested in part on his own views of the wisdom of Cedars's all-employee mandatory vaccination policy. He stated that plaintiff's lack of patient contact warranted excusing her. Nothing in his reasons for seeking an exemption for plaintiff showed her to be unable to get the flu vaccine or that the consequences of her getting a flu vaccine would amount to a disability. Dr. Henderson even viewed plaintiff as sufficiently "able" to get the flu vaccine, notwithstanding the diagnoses he communicated to Cedars, to suggest she get it, after it became clear her exemption request would be denied.

Finally, we acknowledge that plaintiff argues Cedars's policy was too expansive and unnecessary. In considering whether implementing the policy on a workforce-wide basis was a legitimate, nondiscriminatory reason for terminating plaintiff,

---

[2] Plaintiff claims Cedars "arbitrarily recognized [the two contraindications] as the only medical grounds for exemption." This is simply false.

23

the wisdom of the policy is not at issue.  (*Guz, supra*, 24 Cal.4th at p. 358.)

No reasonable factfinder could conclude from this record that Cedars singled plaintiff out for termination because she had a physical disability or because she had a medical condition.  Its facially nondiscriminatory policy, which plaintiff objectively violated, was objective and objectively applied.  Plaintiff does not attempt to argue otherwise.  Her failure to argue pretext in Cedars's legitimate, nondiscriminatory reason for terminating her also requires us to affirm judgment on this cause of action.

**b.      Failure to engage in the interactive process.**

Section 12940, subdivision (n), proscribes an employer's failure "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for a reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."  (*Ibid.*)

Plaintiff argues that Cedars became subject to this duty when "[she] and Dr. Henderson made Cedars aware of her disability."  She asserts that Cedars wrongfully shirked the duty because it was bound to accept Dr. Henderson's view that plaintiff should not get the flu vaccine.  Again without citation to authority, plaintiff asserts "[i]t is never up to the employer to determine whether or not an employee suffers from a disability— that determination rests exclusively within the purview of the employee's treating physician."

Again, plaintiff is incorrect.  Whether an employee is disabled is ultimately a question for the court.  It is true that a request to accommodate a nonobvious disability supported by reasonable medical documentation will ordinarily suffice to trigger the interactive process duty.  (*Kao v. University of San Francisco* (2014) 229 Cal.App.4th 437, 450.)  But, as already

24

noted, an employer is not bound to accept an employee's subjective belief that she is disabled (*Arteaga, supra,* 163 Cal.App.4th at p. 347), and neither the information Dr. Henderson provided to Cedars nor the evidence plaintiff used to oppose summary judgment created a bona fide question of disability. Cedars never viewed plaintiff as disabled, and plaintiff's evidence does not establish a fact issue as to whether she actually was.

This court has previously held that an interactive process claim may lie where a plaintiff is not actually disabled, but the employer regarded the employee as disabled. (See *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 61–62 (*Gelfo*).) This holding flowed directly from the conclusion that an employer has a duty to reasonably accommodate an employee that it merely perceives as disabled—a conclusion driven by FEHA's provisions defining "physical disability" to include an employer's regarding an employee as disabled. (*Gelfo,* at pp. 60, 61; see also §§ 12926, subd. (m)(4) & (5), 12926.1, subd. (b).)

However, we are cited no authority where an employer was bound to engage in an interactive process with an employee who claimed disability but was neither disabled nor regarded by the employer as being disabled. Certainly, an employer rejects an employee's claim of disability to eschew the interactive process at its own peril. If the employee not perceived as disabled later proves she actually was, a claim for failure to engage in the interactive process will lie. But with no disability to accommodate, and no perception of one, there is no duty to accommodate and thus no accommodation to discuss. (See § 12940, subd. (m)(1) [duty to accommodate applies only to "known physical or mental disability of an applicant or employee"].) Plaintiff's failure to present evidence sufficient to

25

create a triable issue as to the disability on which she predicates it dooms this cause of action as well.

### c. Failure to make reasonable accommodation.

Subject to limited exceptions, section 12940, subdivision (m), proscribes an employer's failure to "make a reasonable accommodation for the known physical or mental disability of an applicant or employee." (*Id.*, subd. (m)(1).) Citing *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373, plaintiff recites the elements of a claim for failure to reasonably accommodate as (1) the employee suffered a disability; (2) the employee could perform the essential functions of the job with reasonable accommodation; and (3) the employer failed to reasonably accommodate the employee's disability. Judgment on this claim was proper because plaintiff failed to identify a triable material fact as to her disability.

In defending her claim, plaintiff mixes and matches concepts of "medical condition" and "disability." Again, we must read plaintiff's referenced medical condition only as one amounting to a disability since section 12940, subdivision (m)(1), makes no mention of medical conditions that do not limit a major life activity—it applies only to "physical or mental disabilit[ies]." (*Ibid.*)

Plaintiff argues that even if she was not actually disabled, an employer's perception of her as disabled can suffice to trigger the reasonable accommodation requirement. While her legal proposition is correct (see *Gelfo*, *supra*, 140 Cal.App.4th at pp. 61–62), no facts support its application on this record. She cites only Cedars's view of plaintiff as "immunocompromised" and its use of her "disability as a justification for her to receive the flu vaccine." First, Cedars viewed plaintiff as *not* disabled. There is no indication that it considered her immunocompromised status as limiting her ability to work or get vaccinated. Second, its

26

justification for requiring plaintiff to receive the flu vaccine was that she was an employee. Its policy applied to all employees except those with a qualifying religious or medical exemption. Cedars viewed plaintiff as having no qualifying exemption. That it considered her immunocompromised status an indication for receiving the flu vaccine served only to reinforce its conclusion that she was not disabled in the way she claimed—that her health history made it impossible for her to get the flu vaccine.

### d.    FEHA retaliation.

Section 12940, subdivision (m), prohibits retaliation by an employer for requesting an accommodation under that subdivision—i.e., for a "known physical or mental disability." (*Id.*, subd. (m)(2).) Plaintiff fails to acknowledge the prima facie case she must make to establish a FEHA retaliation claim, i.e., "that she engaged in a protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 217.) By failing to address its elements and provide record citations to evidence demonstrating a fact dispute material to each, plaintiff offers no basis to disturb the trial court's summary adjudication of this cause of action. (See *Murchison, supra*, 60 Cal.App.5th at p. 882 ["our review is limited to contentions adequately raised and supported in the [appellant's] brief"].)

Even if this were not the case, plaintiff's own admissions negate the prospect of any causal link between her request for an accommodation and her termination. Plaintiff acknowledges in briefing that "Cedars terminated [her] because she did not get the [flu] vaccination." This makes any claim it terminated her for requesting a reasonable accommodation untenable.

27

### e. We affirm judgment on plaintiff's remaining "derivative" claims.

Plaintiff argues for reversal as to her remaining claims—failure to prevent discrimination and retaliation and wrongful termination in violation of public policy—solely on the basis that they are derivative of her other claims she argues should not have been summarily adjudicated. As we disagree with plaintiff that summary adjudication of those other claims was improper, she fails to articulate a valid basis for reversal of judgment on her "derivative" claims.

## DISPOSITION

The trial court's judgment is affirmed. Defendant is to recover its costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

VIRAMONTES, J.

28

Filed 5/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| DEANNA HODGES, | B297864 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC691836 |
| v. | |
| CEDARS-SINAI MEDICAL CENTER, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | **[No change in judgment]** |

THE COURT:

     The opinion in the above-entitled matter filed on April 28, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in the judgment.

_____

STRATTON, P. J.       GRIMES, J.       VIRAMONTES, J.